## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VIACOM INTERNATIONAL INC., <br><br> Plaintiff, <br><br> v. <br><br> ZEUS NETWORKS, LLC; AND <br> DOES 1 TO 10, INCLUSIVE, <br><br> Defendant. | Case No. <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMAND** |

Plaintiff, Viacom International Inc. ("Plaintiff" or "Viacom"), asserts the following claims against Defendant Zeus Networks, LLC ("Defendant" or "Zeus") and Does 1 through 10 (collectively, "Defendants"), and alleges as follows:

### NATURE OF ACTION

1.      Viacom brings this action against Zeus Networks, LLC for its knowing, willful, and flagrant violations of Viacom's longstanding intellectual property rights in "Wild 'N Out," a television show that has received critical acclaim and cultural significance in nearly *two decades* of airing.

2.      Without any authorization from Viacom, Zeus developed, produced, and distributed an unlawful copy of Viacom's iconic show "Wild 'N Out" called "Bad vs. Wild." Zeus's copying goes far beyond mere imitation – it is a wholesale appropriation of Viacom's intellectual property, including the show's format, creative and design

1

elements, *and even its host, Nick Cannon*.

3.      In an era where original content is at a premium, Zeus has chosen the path of least resistance: stealing the fruits of Viacom's goodwill and decades of labor and innovation, and pawning it off as its own original idea for its own financial gain.

4.      "Substantial similarity" is an understatement here.  "Bad vs. Wild" does not just take inspiration from the creative elements of "Wild 'N Out" – it uses each and every one of those elements in the same manner in which they are used in the production of "Wild 'N Out."  No reasonable person could watch an episode of "Bad vs. Wild" and observe the total concept and feel of the show to be different in any material way from that of "Wild 'N Out."  The inescapable conclusion is that Zeus intentionally copied elements of "Wild 'N Out" in developing "Bad vs. Wild," knowing that those acts constituted infringements of Viacom's copyrights.  Zeus's collaboration with Mr. Cannon—the longtime host and face of "Wild 'N Out"—in developing "Bad vs. Wild" further cements the conclusion that "Bad vs. Wild" intentionally ripped off "Wild 'N Out" to profit off its creative elements, without having to do the work of creating original content itself.

5.      Not only has Zeus blatantly copied the creative expression of "Wild 'N Out," but it has gone even further by ripping off Viacom's distinctive registered trademarks.  The "Wild 'N Out" trademarks, including its logo and set design, have become remarkably distinctive due to the many years Viacom has spent developing,

producing, marketing, and airing new episodes. The significant resources Viacom invested in the show resulted in widespread recognition, making the "Wild 'N Out" trademarks inseparable from the Viacom brand in the minds of consumers. Zeus knows that, and instead of investing the time and resources to earn its own recognition and goodwill, it simply chose to use what Viacom had already created by mimicking the "Wild 'N Out" logo and set design to encourage a false affiliation with Viacom and its creative property.

6.    The level of copying in "Bad vs. Wild" is so extreme that it has already led to widespread public confusion. Consumers, misled by Zeus's deceptive marketing, actually believe "Bad vs. Wild" is affiliated with or endorsed by Viacom and "Wild 'N Out." This confusion is no accident – it is the intended result of Zeus's deliberate strategy to piggyback on the success and goodwill of "Wild 'N Out." Zeus itself fuels the confusion by deliberately linking "Bad vs. Wild" with "Wild 'N Out" in its marketing, even describing "Bad vs. Wild" on its website as "what happens when Zeus combines with Wild 'N Out on steroids[.]"

7.    But Zeus's transgressions don't stop at mere copying and brand appropriation. "Bad vs. Wild" takes the stolen format of "Wild 'N Out" and twists it into something offensive and inappropriate. "Bad vs. Wild," while cosplaying as a "Wild 'N Out" substitute or successor, features competitions based on harmful stereotypes and offensive content, a stark departure from the good-natured humor of

"Wild 'N Out." This not only tarnishes the reputation of "Wild 'N Out" but also risks causing lasting damage to Viacom's brand and the goodwill it has cultivated over decades of hard work. Given the confusion as to Viacom's affiliation with "Bad vs. Wild," it is likely that some consumers will attribute this offensive and inappropriate content to Viacom, doing lasting damage to its brand.

8.     The potential damage to Viacom and "Wild 'N Out" cannot be overstated. Beyond the immediate financial implications, this blatant copying and association with offensive content threaten to erode two decades of Viacom's carefully built reputation and goodwill. It is an attack not just on Viacom's intellectual property, but on its very brand identity.

9.     Through this action, Viacom seeks to put an end to Zeus's unlawful and unethical conduct and to protect its valuable intellectual property.

## **PARTIES**

10.     Plaintiff Viacom is a corporation organized and existing under the laws of Delaware with its principal place of business in New York, New York. Viacom is a wholly-owned subsidiary of Paramount Global, a leading global media, streaming and entertainment company that creates premium content and experiences for audiences worldwide. Driven by iconic consumer brands, Paramount Global's portfolio includes CBS, Paramount Pictures, Nickelodeon, MTV, Comedy Central, BET, Paramount+ and Pluto TV. Viacom released all seasons of the show "Wild 'N

Out" on its owned and operated networks MTV, MTV2, and VH1, and is the owner of all of its registered intellectual property, including its copyrights and trademarks.

11.    Upon information and belief, Defendant Zeus Networks, LLC is a limited liability company organized under the laws of Delaware and licensed to do business within the state of California, with its principal place of business headquartered in North Hollywood, California.

12.    Defendants DOE 1-10 are individuals whose true names and capacities are currently unknown to Viacom, despite reasonable inquiry and investigation. Viacom believes these DOE defendants were involved in or responsible for the wrongful acts alleged herein. Viacom will amend this Complaint to allege the true names and capacities of these DOE defendants when they have been ascertained through discovery or further investigation. Each of the fictitiously named defendants is responsible in some manner for the conduct alleged herein and proximately caused Plaintiff's damages as alleged herein.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b), and 15 U.S.C. § 1121, as this action arises under the Copyright Act, 17 U.S.C. §§ 101 et seq., and the Lanham Act, 15 U.S.C. §§ 1051 et seq.

14.    This Court has supplemental jurisdiction over Plaintiff's state law claims

pursuant to 28 U.S.C. § 1367(a).

15.     This Court has personal jurisdiction over Defendant because Defendant has regularly conducted and continues to regularly conduct and do business in the state of New York and in this District.  In addition, Defendant's conduct, which constitutes copyright infringement, trademark infringement, and unfair competition, has occurred and continues to occur in this District, and has caused Plaintiff to suffer harm in this District, where Plaintiff has its principal place of business.

16.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant is subject to personal jurisdiction here and a substantial part of the events giving rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS

### A.     Background of Plaintiff Viacom and "Wild 'N Out"

17.     For over 100 years, the Viacom family of companies have been pioneers in the entertainment industry, producing and distributing acclaimed films, television shows, and live events for audiences all over the world. Cumulatively, Paramount's family of networks reaches 2.8 billion subscribers across 174 countries.

18.      "Wild 'N Out" is an iconic improvisational competition show hosted by Nick Cannon where teams comprised of the main cast as well as celebrity guest stars compete in creative challenges blending comedy and hip hop to win the championship belt. The show's first season aired on MTV in 2005 and proved an immediate hit.  It

has been on the air for 21 seasons and is one of the longest-running sketch comedy shows in television history.

19.    The show has secured multiple awards and nominations, including the NAACP Image Award for Outstanding Reality Program, Reality Competition or Game Show (Series), which the show won in 2022 and 2024; and the MTV Movie + TV Award for Best Host, which the show won in 2019.

20.    "Wild 'N Out" has become well-known and receives critical praise due to its distinctive comedy and variety show premise that blends and arranges several creative elements to create a unique entertainment experience.   Those elements include:

- **Improvisational Comedy**:  The core of "Wild 'N Out" is its improvisational comedy format, where cast members and guest stars engage in spontaneous comedic competitions and games, often involving quick wit and humor, showcasing the performers' ability to think on their feet.

- **Host**: Nick Cannon has been the show's host since its inception, becoming synonymous with the show's brand and appeal.

- **Hip-Hop and Music Integration**:  Music plays a significant role in the show, with many segments incorporating freestyle rap battles and musical performances.  The show features a live DJ, Deric Battiste, professionally known as "DJ D-Wrek" ("D-Wrek"),  and integrates hip-hop culture deeply into its format.

- **Celebrity Guests**:  Each episode of the show features celebrity guest appearances, ranging from musicians and actors to social media influencers and athletes.  These guests participate in the games and add star power to the show, attracting a diverse audience.

- **Team-Based Competitions**:  The show is structured around team-based competitions (*e.g.,* "Red Squad vs. Black Squad," "Old-school vs. New-school"), to create a dynamic and competitive atmosphere, with teams competing in various comedic and musical challenges for the "Wild 'N Out Comedy Championship Belt."

- **Audience Interaction and Scoring**:  The show is filmed in front of a live television audience, whose reactions and participation are integral to the show's energy and tone.  Points are awarded to the teams by D-Wrek, the "Wild 'N Out Goddesses", and through audience applause, allowing the audience to play a role in determining the winners of the games.

- **Themed Seasons and Episodes**:  Each season of the show introduces new themes and creative elements.  For example, Season 21 features "Old School vs. New School" showdown, highlighting the clash and collaboration between veteran cast members and new comedic talents.

- **Visual and Graphic Elements**:  The show employs vibrant visual and graphic elements, including unique opening sequences and thematic graphics packages for each season, contributing to the show's distinctive look and feel.  "Wild 'N Out" has distinctive visual elements, including:

  o A specific stage setup designed to facilitate the show's unique format.

  o A recognizable logo featuring the show's name in bold graffiti-style type with the first two words "Wild 'N" appearing above the word "Out."  The text is the same color with each letter outlined in one or more contrasting colors, creating a striking visual.

  o Consistent color schemes and visual motifs used throughout the show and in promotional materials.

- **Mood, Pace, and Tone**:  The show is known for its particular mood, pace, and tone, characterized by fast-paced, witty humor, playful competition between teams, improvised content based on audience suggestions, and a blend of physical comedy and verbal

wit.

- **Variety of Games and Segments**:  The show includes a variety of recurring games and segments, such as "Wildstyle," "Got Props," and "Let Me Holla," each with its own set of rules and comedic focus, designed to challenge the performers' creativity and improvisational skills.

21.    Overall, "Wild 'N Out" combines and arranges the foregoing elements of improvisational comedy, hip-hop culture, celebrity participation, and audience interaction to create a vibrant and entertaining variety show that has remained popular across 21 seasons, over nearly two decades.

22.    "Wild 'N Out" has become a cultural phenomenon, inspiring iconic catchphrases, pickup lines, and spinoff products.  For example, in 2015, media outlet Complex published an article highlighting "the 10 best punchlines in *Wild 'N Out* history" and praising the show's "Wildstyle" segments, which it describes as "open-ended freestyle rap battles where Nick Cannon's team and his celebrity guest's team exchange their most savage disses over a beat from the show's resident maestro, DJ D-Wrek."[1]  Numerous TikTok videos recap fan favorite pickup lines from the show's "Let Me Holla" segment.[2]    Paramount sells official "Wild 'N Out" branded merchandise, including t-shirts, tank tops, hoodies, jerseys, face masks, baseball caps,

---

[1] Jenkins, C., *The 10 Best Punchlines in 'Wild 'N Out' History*, Complex, June 9, 2015, available online at https://www.complex.com/music/a/craig-jenkins/the-10-best-punchlines-in-wild-n-out-history.

[2] *See*, *e.g.*, https://www.tiktok.com/discover/best-pick-up-line-wild-n-out;

beanie hats, leggings, sweatpants, shorts, stickers, coffee mugs, durags, and blankets featuring the show's iconic logo and catchphrases.[3]

23.    Viacom is the sole owner of any and all copyrights in "Wild 'N Out." Episodes of "Wild 'N Out" have been duly registered with the United States Copyright Office, and each was assigned a registration number.  A list of hundreds of "Wild 'N Out" episodes and the corresponding Certificate of Copyright Registration Number issued to Viacom is attached hereto as Exhibit A and incorporated by reference herein. By virtue of such registrations, Viacom has the exclusive rights to reproduce, distribute, perform, display, and create derivative works based on "Wild 'N Out," as provided under 17 U.S.C. § 106.

24.    Viacom's registration of each episode of "Wild 'N Out" was done in accordance with the provisions of 17 U.S.C. § 411(a), satisfying the statutory conditions precedent to the institution of this copyright infringement action.

25.    Viacom also owns numerous distinctive trademarks (the "WNO Trademarks") that have come to symbolize the show and its immediately-recognizable aesthetic, in the minds of consumers.  On March 1, 2019, Viacom applied to register the mark WILD 'N OUT as a word mark covering various entertainment services, including "entertainment services in the nature of continuing program series, featuring

---

[3] *See* https://www.paramountshop.com/collections/wild-n-out?page=1

live action, comedy and drama provided through cable television, broadcast television, internet, video-on-demand, and through other forms of transmission media; providing online information in the field of entertainment concerning television programs."  On August 6, 2019, the United States Patent & Trademark Office issued a certificate of registration for Viacom's mark WILD 'N OUT for the same services, as U.S. Patent & Trademark Office Reg. No. 5829077.  Viacom has continuously used this mark in connection with the "Wild 'N Out" series dating back to at least as early as 2005.  The "Wild 'N Out" logo is similarly iconic, is registered as a trademark under U.S. Patent & Trademark Reg. No. 6359162, and has also been continuously used over the past two decades.

26.    Viacom also has registered trademarks in the WILD 'N OUT mark in connection with various goods and services, including the following:

- On May 2, 2019, Viacom applied for the mark WILD 'N OUT in connection with "restaurant and bar services, including restaurant carryout services."  On September 17, 2019, the United States Patent & Trademark Office issued a certificate of registration for Viacom's mark WILD 'N OUT for the same goods and services, as U.S. Patent & Trademark Office Reg. No. 5863328.

- On March 2, 2020, Viacom applied for the mark WILD 'N OUT in connection with "hats; beanies; caps being headwear; shirts; t-shirts; sweatshirts; tank tops; leggings; pants."  On May 25, 2021, the United States Patent & Trademark Office issued a certificate of registration for Viacom's mark WILD 'N OUT for the same goods and services, as U.S. Patent & Trademark Office Reg. No. 6359163.

27.    The above U.S. registrations for the WNO Trademarks are valid,

subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the WNO Trademarks are *prima facie* evidence of their validity and of Viacom's exclusive right to use the WNO Trademarks in connection with the goods and services they cover. True and correct copies of the U.S. Registration Certificates, along with print-outs from the USPTO's database showing the current status of the above-listed WNO Trademarks, are collectively attached as Exhibit B.

28.    The WNO Trademarks are famous and distinctive marks, as those terms are used in 15 U.S.C. § 1125(c)(1), and have been continuously used and never abandoned. Viacom has expended substantial time, money, and other resources in advertising and promoting the WNO Trademarks, and Viacom has been the subject of extensive unsolicited publicity recognizing the trademarks as famous, iconic, and highly distinctive. Since 2005, Viacom has used the WNO Trademarks in commerce throughout the United States in connection with the distribution, promotion, marketing, and advertising of the "Wild 'N Out" series. For example, Viacom has continuously made available dozens of clips from the "Wild 'N Out" series on the official "Wild 'N Out" YouTube page, which has 15.1 million subscribers. In short, as a direct result of Viacom's exclusive and extensive use and advertising of the WNO Trademarks, the WNO Trademarks have achieved tremendous fame and recognition with consumers as identifying and distinguishing Viacom exclusively and uniquely as

the source of the high-quality, entertaining programming to which it has been applied. As such, the goodwill associated with the WNO Trademarks is of incalculable and inestimable value to Viacom.

### B.    Background of Defendant Zeus Network and its History of Infringing Conduct.

29.    Zeus is an entertainment streaming platform founded in 2018 providing scripted and unscripted content with a focus on influencers. The network has been plagued by criticism since its founding, starting with a notoriously bug-ridden launch, ranging from technological disfunction to "basic errors, like misspelling Snoop Dogg's name or displaying incorrect timestamps for show durations."[4]  More recently, Zeus has come under fire for its pervasive use of "exploitative content toward Black people through perpetuating negative tropes and stereotyped images of Blackness[,]" including by "over-sexualizing and fetishizing Black women – often showcasing images of Black women wearing sexually revealing clothing and dancing provocatively" and common instances of cast members being "depicted as overly aggressive and violent."[5]  Commentators note that, "[w]hile watching the network, it

---

[4] Farokhmanesh, M., *The Zeus Network Started Off Buggy, but Wants to be the Netflix of Influencers*,    The Verge, July 23, 2018, available online at https://www.theverge.com/2018/7/23/17581872/zeus-network-lil-tay-destorm-power.

[5] Niguel Hoskin, M., *Does Lemuel Plummer's Zeus Network Represent Everything That is Wrong with how Black People are Portrayed on Television?*, Forbes,    November    22,    2022,    available    online    at

is not uncommon for the exchange of expletives and fighting to suddenly erupt between cast members on shows such as *Bobby I Love You Purr*, *Chrisean Rock & Blueface: Crazy In Love*, *Baddies West*, and *Baddies South*."[6]

30.     This is not the first time that Zeus has tried to copy content from Viacom. Zeus has, on numerous occasions, attempted to rip off other Viacom television shows by hiring (in violation of contractual obligations) talent working on other Viacom productions.

31.     Clearly, Zeus has a pattern and practice of disregarding the law and norms of acceptable business practices to promote its network, and ripping off the creative fruits of others.  Viacom's labor and decades-worth of goodwill is just the latest scheme.  Zeus needs to be held accountable for such blatant disregard for the law.

C.     **Zeus Develops and Produces "Bad vs. Wild," Intentionally Infringing on Viacom's Intellectual Property.**

32.     In November 2023, Plaintiff learned that Defendant was producing and promoting a television program titled "Bad vs. Wild."

33.     "Bad vs. Wild" blatantly copies numerous elements of "Wild 'N Out," including:

---

https://www.forbes.com/sites/maiahoskin/2022/11/22/does-lemuel--plummers-zeus-network-represent-everything-that-is-wrong-with-how-black-people-are-portrayed-on-television/.

[6] *Id.*

(a)    **Name**: The title "Bad vs. Wild" is extremely similar to the "Wild 'N Out" name, consisting of two single-syllable words separated by an abbreviated connector and sharing the word "Wild."

(b)    **Logo**: The "Bad vs. Wild" logo copies the look, typeface, and arrangement of the "Wild 'N Out" logo.

(c)    **Talent Overlap**:  Zeus enlists numerous individuals who were previously affiliated with productions of "Wild 'N Out" (and in some cases are still working on "Wild 'N Out").  Those individuals include, but are not limited to:

- "In Association with NCredible Entertainment" and logo card for NCredible at the end of each episode of "Bad vs. Wild." NCredible is a production company owned by Nick Cannon, the host of "Wild 'N Out."

- Mr. Cannon is also an Executive Producer of "Bad vs. Wild."

- Benjamin Sumpter, who worked on "Wild 'N Out Tour" is an Executive Producer of "Bad vs. Wild."

- Nile Evans, a "Wild 'N Out" Executive Producer, is a Consulting Producer for "Bad vs. Wild."

- Courtney Bledsoe p/k/a "Courtney Bee," a recurring "Wild 'N Out" cast member, is a host of "Bad vs. Wild."

- Sydney Castillo, Javen Cannon, and Courtney Bledsoe, all creative consultants on "Wild 'N Out," serve in the same role on "Bad vs. Wild."

- "Bad vs. Wild" also enlists the following talent from VH1, another network owned and operated by Viacom:  Joseline Hernandez, Marialyn, Sukihana, Sidney Starr, Bobb'e Lytes, Lovely Mimi, Sky, and Double Dose Twins.

- This is a continuation of Zeus's long history of attempting to copy Viacom shows by hiring talent from various well-known Viacom shows—in violation of numerous contractual obligations.

(d)    **Format**: The show uses a nearly identical format to "Wild 'N Out," copying the following format elements:

- Two-team head-to-head competitions with special guest team captains;

- Live studio audience;

- Nick Cannon enters the stage after being announced and hypes up the crowd;

- Individual team members introduced in the show opener and reintroduced to the live studio audience by Nick Cannon when teams are invited onstage.  Both teams enter from the side via a tunnel, with one team introduced before the other;

- Both shows have three games in which players compete to gain points for their teams, plus an additional "bonus round";

- Points are awarded or denied by DJ booth:  the DJ soundboard is used to punctuate awards or denials of team points with "ding" and "err" sounds, respectively;

- Live musical performance at the end of each episode;

- Championship belt awarded to the winner, which looks similar to the "Wild 'N Out" belt.

(e)    **Wardrobe**:  As in several seasons of "Wild 'N Out," the team appearing on the left on "Bad vs. Wild" wears black t-shirts and sweatshirts

displaying the show name and color scheme, while the team appearing on the right side wears white.

(f)    **Verbiage**: "Bad vs. Wild" appropriates phrases used on "Wild 'N Out":

- Both shows feature an audience chant of the show name ("Bad vs. Wild! Bad vs. Wild!" or "Wild 'N! Wild 'N!") at various points throughout the show;

- Both shows introduce Nick Cannon in the same way ("Bad vs. Wild":   "Make some noise for the one, the only, Nick Cannon!"; "Wild 'N Out":  "Alright y'all get up out your seats, put your hands in the air and make some noise for your host, Mr. Nick Cannon!");

- The language used to interact with the teams is similar in both shows ("Bad vs. Wild":   "Let's get both teams to the stage. Bad side step up, Wild side step up."; "Wild 'N Out":  "I need the New School to step up, I need the Old School to step up.");

- Both shows interact with the audience to determine the winner ("Bad vs. Wild":  "We're going to leave it up to the audience: who do you think won the first game? . . . Make some noise for the Wild side one time. . . Make some noise for the Baddies one time"; "Wild 'N Out":  "We gotta hear it from the crowd! Let's give it up for the New School . . . alright y'all let's give it up for the Old School.");

- Like "Wild 'N Out," "Bad vs. Wild" makes specific references to the word "wild" (for example, "It's time to get wild and you know I like it wild" and "It was wild, it was lit y'all.").

(g)    **Host**: Nick Cannon, the long-time host of "Wild 'N Out," has been enlisted as the host of "Bad vs. Wild" and the face of the show.  Zeus's website specifically uses the phrase "Nick Cannon Presents" on the "Bad vs. Wild" landing

page, language which also appears on Paramount+'s "Wild 'N Out" landing page:

**Paramount+'s "Wild 'N Out" Landing Page:**



**Zeus Network's "Bad vs. Wild" Landing Page:**



(h)     **Creative Elements**: The show copies stage setup, mood, pace, tone, and even specific characters from "Wild 'N Out."

34.     At various times in both shows, the nearly identical logos are displayed centerstage in fuchsia, turquoise, and black in a style emulating neon lights with blue and fuchsia lights in the background:

**<u>Wild 'N Out Logo Onstage:</u>**          **<u>Bad vs. Wild Logo Onstage:</u>**

          

35.     The stages in both shows are often nearly identical with two couches (one on either side of the stage), a large screen in the center of the back wall (which displays either the show logo or name of the game), a DJ booth to the left of the stage, and competitors seated on the benches and competing in the center of the stage:

**<u>Wild 'N Out Stage Set Up:</u>**          **<u>Bad vs. Wild Stage Set Up:</u>**









36.     The "Bad vs. Wild" lighting design is almost identical to that in seasons

18 and 21 of "Wild 'N Out," featuring small fuchsia and turquoise disc-shaped lights in the background and blue spotlight beams:

**<u>Wild 'N Out Lighting Design:</u>**      **<u>Bad vs. Wild Lighting Design:</u>**

   

37.    As in "Wild 'N Out," the cast members of "Bad vs. Wild" also wear clothing emblazoned with variations of the "Bad vs. Wild" logo, which is nearly indistinguishable from the "Wild 'N Out" logo:

**<u>Wild 'N Out Cast Members:</u>**      **<u>Bad vs. Wild Cast Members:</u>**

   

38.    In short, Zeus has intentionally and methodically copied nearly every individual element of "Wild 'N Out" as well as the selection and arrangement of the creative elements of "Wild 'N Out" so as to mimic its look and feel and to trade on Viacom's brand and goodwill.

39.    Defendant has promoted "Bad vs. Wild" by explicitly invoking "Wild 'N Out," including describing it on Zeus's official Instagram page as "***Wild 'N Out on steroids***" but "Bigger, BADDER ***and WILDER***," intentionally creating confusion and suggesting a non-existent connection between the shows:

74,953 likes

thezeusnetwork

WOAH!! 😳 This is an EPIC announcement!! 😳 The ENTERTAINMENT LEGEND @nickcannon @ncrediblegang has joined the ZEUS Team as an Executive Producer of a new series called #BadVSWildLasVegas!! 😳 An all Female Series full of CHALLENGES and SHOWDOWNS with some of your favorite famous ladies that have REAL BEEF or simple RIVALRIES!! 😳.. It's giving Wild-N-Out on STEROIDS .. but Bigger, BADDER and WILDER!! 😳 Who's ready to see what the show is all about?! 👀 🤔 Drop those ⚡ in the comments 👇

40.    Defendant again falsely invoked a connection between the two shows on its website, this time going even further to imply an official collaboration, writing that "Bad vs. Wild" is "what happens ***when Zeus combines with Wild 'N Out on steroids***":



41.    As a result of Defendant's deliberately false invocation of "Wild 'N Out," Defendant's promotional materials have caused substantial consumer confusion. Many members of the public have speculated that the shows are affiliated or that "Bad vs. Wild" is a spinoff or reboot of "Wild 'N Out":

 

42.    To make matters worse, virtually every episode of "Bad vs. Wild" contains several instances of offensive and inappropriate content that glorifies

violence, objectifies women, and perpetuates insidious stereotypes.  Zeus's clear goal

is to profit off the drama and shock value, stealing Viacom's intellectual property to

attract an audience, all with the result of casting Viacom in a negative light by drawing

this false affiliation.

43.     A list of illustrative (but not nearly exhaustive) examples includes:

- The opening line for every single episode is "WHATUP N****S AND B*****s"

- Close up shots of exposed buttocks and breasts and up women's skirts;

- Participants vaping on stage;

- Participants physically threatening audience members;

- Participants making vulgar and threatening gestures at one another;

- Massive brawls (a common occurrence throughout the season);

- Vulgar and graphic commentary by participants;

- Fights manufactured by the producers when they don't arise between participants naturally;

- Participants refer to and encourage hard drug use;

- One episode theme is "Dark Skin vs. Light Skin," which, following a public controversy, is rebranded to "Ratchet vs. Bougie," doubling down on harmful and extremely offensive stereotypes about skin color;

- Another episode is themed "Talls vs. Smalls," wherein the "Smalls" team members are little people, who are infantilized and made fun of by the participants.

44.     All of the foregoing content starkly contrasts with the good-natured

humor of "Wild 'N Out" and risks tarnishing its reputation by association.

45.     On December 14, 2023, after learning that Zeus had created a show that was suspiciously similar to "Wild 'N Out," Viacom sent a cease-and-desist letter to Zeus.  The letter put Zeus on notice of (1) the obvious unlawful copying of nearly every aspect of "Wild 'N Out"; (2) the unlawful invocation of Viacom throughout Zeus's marketing of "Bad vs. Wild"; and (3) the widespread actual confusion exhibited by consumers on various social media posts caused by Zeus's deceptive, bad faith marketing and copying.  Zeus continued in its unlawful infringing activities unabated, with full knowledge of the damaging effects of its copying and deception.  It neither responded to Viacom's cease and desist letter, nor made any substantive changes to the show to avoid further infringement.

46.     Defendant's actions have done immeasurable damage to Viacom's reputation and goodwill by drawing a false connection between Viacom and Zeus's shamelessly offensive and inappropriate rip-off show.

**D.     Zeus's Interference with Contractual Relations.**

47.     In utilizing Nick Cannon in the role of the show's host, Zeus is not only infringing upon Viacom's intellectual property, but separately, it is intentionally interfering with Viacom's contractual relationship with Mr. Cannon.

48.     Zeus—having previously violated exclusivity provisions when working with Viacom talent, and having knowledge of industry custom and practice—was

aware that Mr. Cannon is under contract with Viacom in connection with "Wild 'N Out," prohibiting him from engaging in any outside services that (i) "tarnish Cannon's image as on-camera talent for ['Wild 'N Out']", (ii) "incorporate any characters or materials from ['Wild 'N Out'] (nor be similar thereto)", or (iii) "use or incorporate any of the names or marks or logos" of Viacom or its related companies.

49.    Zeus enlists Mr. Cannon as host of a show that maliciously infringes upon the intellectual property of "Wild 'N Out," incorporates numerous characters and other materials from "Wild 'N Out," is unquestionably "similar" to "Wild 'N Out," copies the trademarked name and logo of "Wild 'N Out," which is owned by Viacom, and has tainted Mr. Cannon's image as on-camera talent for "Wild 'N Out."  In doing so, Zeus has caused Mr. Cannon to violate his written agreement related to "Wild 'N Out" and has therefore interfered with Viacom's contractual rights and relations.

50.    The damage caused by Zeus's interference with Mr. Cannon's contract is magnified by the wave of negative publicity which emanated from Zeus's unoriginal content and colorist and sizeist stereotyping.

### CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (Copyright Infringement, 17 U.S.C. §§ 101 et seq.)

51.    Viacom re-alleges and incorporates by reference each of the prior paragraphs as though fully set forth herein.

52.    Viacom is the owner of all right, title, and interest in and to the copyrights

in each episode of "Wild 'N Out," including its format, creative elements, and specific expression.

53.    Viacom has registered its copyrights in "Wild 'N Out" with the United States Copyright Office. The copyright registrations include, but are not limited to, those listed in Exhibit A and incorporated herein.

54.    Without authorization from Viacom, Zeus has copied and used Viacom's copyrighted material in the production and promotion of "Bad vs. Wild," including but not limited to:

(a)    The overall format and structure of "Wild 'N Out";

(b)    The specific arrangement and selection of elements that form the distinctive expression of "Wild 'N Out";

(c)    Particular game concepts and rules developed for "Wild 'N Out";

(d)    Specific characters and character traits created for "Wild 'N Out".

55.    Zeus had access to Viacom's copyrighted works, as the episodes of "Wild 'N Out" have been widely broadcast and the show is extremely well-known in the industry and in American culture.

56.    Zeus's "Bad vs. Wild" is substantially similar to Viacom's copyrighted work. The similarities are so striking as to preclude the possibility that Zeus independently created its work.

57.    Zeus's unauthorized use of Viacom's copyrighted material constitutes

copyright infringement under 17 U.S.C. § 501.

58.    Zeus's infringement of Viacom's copyrights has been willful, intentional, and purposeful, in disregard of and indifferent to Viacom's rights.

59.    As a direct and proximate result of Zeus's copyright infringement, Viacom has suffered and will continue to suffer monetary loss and irreparable injury to its business, reputation, and goodwill.

60.    Viacom is entitled to recover damages, including any profits made by Zeus, or statutory damages under 17 U.S.C. § 504, as well as attorneys' fees under 17 U.S.C. § 505.

<u>SECOND CLAIM FOR RELIEF</u>
**(Trademark Infringement
Under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1))**

61.    Plaintiff re-alleges and incorporates by reference each of the prior paragraphs as though fully set forth herein.

62.    The WNO Trademarks are owned by Viacom and are valid and subsisting.

63.    Upon information and belief, Zeus has used and/or imminently intends to use the WNO Trademarks, or words and symbols that are confusingly similar to the WNO Trademarks, in interstate commerce, without the consent of Viacom.

64.    Zeus's conduct as alleged above constitutes the unauthorized use in interstate commerce of the WNO Trademarks in connection with the sale, offering for

sale, promotion, or advertising of its products, and has caused and/or is likely to cause confusion or mistake or deception of the public as to (i) the affiliation, connection, and/or association of Viacom with Zeus and/or "Bad vs. Wild," and/or (ii) the sponsorship, endorsement, or approval of Zeus and "Bad vs. Wild," in each case a violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1).

65.    Upon information and belief, Zeus's actions were deliberate, willful, and in conscious disregard of Viacom's superior rights in its registered WNO Trademarks.

66.    As a result of Zeus's conduct, Viacom has suffered irreparable harm to its WNO Trademarks, reputation and goodwill, for which it has no adequate remedy at law, and will continue to suffer irreparable injury unless and until Zeus's infringing acts are enjoined by this Court.

67.    Pursuant to 15 U.S.C. §§ 1116-1117, Viacom is entitled to injunctive relief, to actual damages in an amount to be determined at trial, to have such damages trebled, to Zeus's profits, to the costs of this action, and to attorneys' fees.

### THIRD CLAIM FOR RELIEF
### (Trade Dress Infringement Under
### Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))

68.    Viacom re-alleges and incorporates by reference each of the prior paragraphs as though fully set forth herein.

69.    The overall look and feel of "Wild 'N Out," including its stage setup, format, and visual appearance, constitute protectable trade dress.

70.    Viacom's trade dress is inherently distinctive and/or has acquired secondary meaning in the marketplace, serving to identify and indicate the source of Viacom's services to the consuming public.

71.    Viacom's trade dress is non-functional and is eligible for protection under the Lanham Act.

72.    Zeus's copying of these elements in "Bad vs. Wild" constitutes trade dress infringement under 15 U.S.C. § 1125(a).

73.    Zeus's actions have caused and are likely to continue to cause confusion, mistake, or deception as to the source, sponsorship, or approval of Zeus's television program.

74.    The consuming public is likely to believe that Zeus's "Bad vs. Wild" is produced, sponsored by, or affiliated with Viacom, constituting trade dress infringement.

75.    As a direct and proximate result of Defendant's trade dress infringement, Plaintiff has suffered and will continue to suffer monetary loss and irreparable injury to its business, reputation, and goodwill.

76.    Zeus's conduct as alleged above has caused and/or will cause Viacom to suffer injury, for which it has no adequate remedy at law.  Pursuant to 15 U.S.C. §§ 1116-1117, Viacom is entitled to injunctive relief, to actual damages in an amount to be determined at trial, to have such damages trebled, to Zeus's profits, to the costs

of this action, and to attorneys' fees.

## FOURTH CLAIM FOR RELIEF
### (Unfair Competition Under
### Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))

77.    Viacom re-alleges and incorporates by reference each of the prior paragraphs as though fully set forth herein.

78.    Viacom owns valuable registered trademark rights in the WNO Trademarks, which, by virtue of their use by Viacom, in connection with the promotion and sale of goods and services, have gained widespread consumer recognition, and have developed valuable goodwill.

79.    Upon information and belief, Zeus has used and/or imminently intends to use the WNO Trademarks in interstate commerce, without the consent of Viacom, to identify Zeus's property, goods, and services and/or in connection with the advertising and promotion of "Bad vs. Wild" and such goods and services.

80.    Zeus's conduct as alleged above constitutes the unauthorized use in commerce of the WNO Trademarks and has caused and/or is likely to cause confusion, mistake, or deception of the public as to (i) the affiliation, connection, and/or association of Viacom with Zeus and/or "Bad vs. Wild," and/or (ii) the sponsorship, endorsement, or approval of Zeus, "Bad vs. Wild," and any goods or services which Zeus currently sells or intends to sell in the future, in each case a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

81.    Zeus's conduct as alleged above has caused and/or will cause Viacom to suffer injury, for which it has no adequate remedy at law.  Pursuant to 15 U.S.C. §§ 1116-1117, Viacom is entitled to injunctive relief, to actual damages in an amount to be determined at trial, to have such damages trebled, to Zeus's profits, to the costs of this action, and to attorneys' fees.

<u>**FIFTH CLAIM FOR RELIEF**</u>
**(Dilution Under**
**Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c))**

82.    Viacom re-alleges and incorporates by reference each of the prior paragraphs as though fully set forth herein.

83.    Viacom's WNO Trademarks are famous and distinctive within the meaning of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(c), and Viacom has built up valuable goodwill in the WNO Trademarks.  The WNO Trademarks have enjoyed such distinction and fame since long before Zeus commenced unauthorized use of the WNO Trademarks.

84.    The WNO Trademarks have been in use for many years, have achieved a high degree of recognition among the general public, and are registered on the principal register.

85.    Upon information and belief, Zeus has used and/or intends to use the WNO Trademarks in interstate commerce in connection with the advertising and promotion of "Bad vs. Wild," as well as in connection with goods and services which

Zeus intends to sell or offer in the future.

86.     Zeus's use of the WNO Trademarks has caused actual harm and is likely to cause harm to Viacom by diluting and weakening the unique and distinctive significance and quality of the WNO Trademarks to identify Viacom's goods and services and by tarnishing the WNO Trademarks in the minds of consumers.

87.     Zeus's actions will diminish the capacity of Viacom's WNO Trademarks to identify and distinguish Viacom's goods and services.

88.     Zeus's association of the WNO Trademarks with content that is offensive or of lower quality is likely to harm the reputation of Viacom's WNO Trademarks.

89.     By reason of the foregoing, Zeus has violated Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

90.     Upon information and belief, Zeus's actions were deliberate, willful, and in conscious disregard of Viacom's rights.

91.     Zeus's conduct as alleged above has caused and/or will cause Viacom to suffer injury, for which it has no adequate remedy at law.  Pursuant to 15 U.S.C. §§ 1116-1117, Viacom is entitled to injunctive relief, to actual damages in an amount to be determined at trial, to have such damages trebled, to Zeus's profits, to the costs of this action, and to attorneys' fees.

## SIXTH CLAIM FOR RELIEF
### (Common-Law Trademark Infringement)

92.     Viacom re-alleges and incorporates by reference each of the prior

paragraphs as though fully set forth herein.

93.    Zeus's conduct as alleged above constitutes infringement and misappropriation of the WNO Trademarks in violation of Viacom's rights under common law and in equity.

94.    Upon information and belief, Zeus's actions were deliberate, willful, and in conscious disregard of Viacom's rights.

95.    Zeus's conduct as alleged above has caused and/or will cause Viacom to suffer injury, for which it had no adequate remedy at law.

96.    Viacom is entitled to injunctive relief, to actual damages in an amount to be determined at trial, to have such damages trebled, to Zeus's profits, to the costs of this action, and to attorneys' fees.

## SEVENTH CLAIM FOR RELIEF
### (Common-Law Unfair Competition)

97.    Viacom re-alleges and incorporates by reference each of the prior paragraphs as though fully set forth herein.

98.    By using the WNO Trademarks in commerce without authorization by Viacom, Zeus is knowingly and willfully causing actual consumer confusion by creating the false and misleading impression that Zeus and "Bad vs. Wild" are related to, affiliated with, and connected with Viacom.

99.    Upon information and belief, Zeus's deliberate use of the WNO Trademarks in connection with marketing, advertising, promotion, and other activities

related to "Bad vs. Wild" was done in bad faith with the intent to unfairly benefit from the expense, time, effort, and labor expended by Viacom in developing and promoting the WNO Trademarks.

100.  By reason of the foregoing, Zeus's conduct constitutes willful and deliberate false designations of origin, false description and representation, and unfair competition, in violation of Viacom's rights under common law and equity.

101.  Zeus's conduct as alleged above has been—and continues to be— performed intentionally, maliciously, fraudulently and willfully for the purpose of deceiving the public, including Viacom's viewers, into using, purchasing, and/or viewing Zeus's goods and services, particularly the television program "Bad vs. Wild," based on the false belief that those goods and services are associated with Viacom.

102.  The offensive and harmful content of Zeus's knockoff of "Wild 'N Out" further devalues Viacom's WNO Marks.  Viewers, expecting to see a good-natured, entertaining program of the same caliber as "Wild 'N Out," have instead been confused, disappointed, and shocked by the degrading material that permeates "Bad vs. Wild."

103.  As alleged above, Zeus has further diminished Viacom's WNO Marks and its brand by using them in connection with inferior television programming.  When viewing an inferior product bearing Viacom's WNO Marks, such as "Bad vs. Wild,"

and believing it to be authorized by Viacom, consumers' opinion of the quality of the services offered in connection with Viacom's WNO Marks has been and will continue to be diminished.

104.    With knowledge of Viacom's renown and distinction, Zeus intended to trade, has traded, and upon information and belief, will continue to trade on the goodwill and brand recognition of Viacom's WNO Marks.

105.    As a direct and proximate result of Zeus's misleading and deceptive conduct, Viacom has been harmed and will continue to suffer both irreparable harm as well as monetary damages.  Viacom will continue to suffer harm unless the Court enjoins Zeus from continuing to use Viacom's WNO Marks.

106.    Viacom is entitled to injunctive relief, to actual damages in an amount to be determined at trial, to have such damages trebled, to Zeus's profits, to the costs of this action, and to attorneys' fees.

## EIGHTH CLAIM FOR RELIEF
**(Trademark Dilution in Violation of the New York General Business Law (N.Y. Gen. Bus. Law § 350-l))**

107.    Viacom re-alleges and incorporates by reference each of the prior paragraphs as though fully set forth herein.

108.    Viacom is the exclusive owner of the WNO Trademarks.

109.    The WNO Trademarks are famous and distinctive in the State of New York, and Viacom has built up valuable goodwill in the WNO Trademarks.  The WNO

Trademarks have enjoyed widespread publicity and recognition in the State of New York, the United States, and worldwide, since long before Zeus commenced its illegal and unauthorized use of the WNO Trademarks.

110.   Upon information and belief, Zeus has used and/or intends to use the WNO Trademarks in commerce in connection with the advertising, marketing, and promotion of "Bad vs. Wild."

111.   Zeus's use in commerce of the WNO Trademarks dilutes, and/or is likely to dilute the distinctive quality of Viacom's famous WNO Trademarks and lessens the capacity of those marks to identify and distinguish Viacom's goods and services.

112.   Zeus's use in commerce of the WNO Trademarks tarnishes, and/or is likely to tarnish the WNO Trademarks by linking the WNO Trademarks and Viacom to its inferior product, "Bad vs. Wild," and by portraying the WNO Trademarks and Viacom in an unwholesome or unsavory context, thereby causing negative associations for Viacom's trademarks.

113.   By the acts described above, Zeus has diluted, and/or is likely to dilute the distinctiveness of Viacom's famous WNO Trademarks, and caused a likelihood of harm to Viacom's business reputation in violation of Section 360-l of the New York General Business Law.

114.   Zeus's acts have caused, and will continue to cause, irreparable injury to Viacom.  Viacom has no adequate remedy at law and is damaged in an amount not yet

determined.

## NINTH CLAIM FOR RELIEF
### (Violation of the New York Consumer Protection Act
### (N.Y. Gen. Bus. Law §§ 349-350))

115.    Viacom re-alleges and incorporates by reference each of the prior paragraphs as though fully set forth herein.

116.    Zeus's use of confusingly similar imitations of the WNO Trademarks constitutes deceptive trade practices that tend to deceive or mislead consumers and the trade in violation of the New York Consumer Protection Act, New York Gen. Bus. Law § 349-350.

117.    Zeus has engaged in consumer-oriented conduct that has affected the public interest of New York and has resulted in injury to consumers in New York.

118.    Zeus's use of the WNO Trademarks, described herein, is materially misleading.  Such acts or practices have deceived or have a tendency to deceive a material segment of the public to whom Zeus has directed its marketing activities, and Viacom has been injured thereby.

119.    By the acts described above, Zeus has willfully engaged in deceptive acts or practices in the conduct of business and furnishing of services in violation of Sections 349 and 350 of the New York General Business Law.

120.    Zeus's acts have caused, and will continue to cause, irreparable injury to Viacom.  Viacom has no adequate remedy at law and has been damaged in an amount

yet to be determined.

## TENTH CLAIM FOR RELIEF
### (Intentional Interference with Contractual Relations)

121.   Viacom re-alleges and incorporates by reference each of the prior paragraphs as though fully set forth herein.

122.   Viacom has a valid and enforceable contract with Nick Cannon in connection with "Wild 'N Out."

123.   Zeus had knowledge of this contract. Upon information and belief, such contracts are standard in the industry, and Zeus has previously been made aware of Nick Cannon's contractual obligations to Viacom in connection with "Wild 'N Out."

124.   Zeus intentionally induced Nick Cannon to breach his contract with Viacom by enlisting him as the host of "Bad vs. Wild," knowing that this would violate the terms of Nick Cannon's contract with Viacom.

125.   As a result of Zeus's actions, Nick Cannon has breached his contract with Viacom by:

(a)   Engaging in activities that tarnish his image as on-camera talent for "Wild 'N Out";

(b)   Incorporating characters or materials from "Wild 'N Out" in another production, "Bad vs. Wild";

(c)   Using or incorporating names, marks, or logos associated with Viacom's brands, i.e., the WNO Trademarks.

38

126.    Viacom has been harmed by Zeus's interference with its contractual relationship with Nick Cannon, including but not limited to:

(a)    Loss of exclusivity in Nick Cannon's services;

(b)    Damage to the unique brand identity of "Wild 'N Out" that is closely tied to Nick Cannon;

(c)    Confusion in the marketplace regarding Nick Cannon's affiliation.

127.    Zeus's interference was intentional and without justification, designed to unfairly compete with Plaintiff by misappropriating key elements of Plaintiff's successful show.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

(a)    For permanent injunctive relief prohibiting Zeus from producing, promoting, distributing, or airing any existing or future episodes of "Bad vs. Wild" or any other program that infringes Plaintiff's intellectual property rights;

(b)    For an award of Viacom's actual damages and Zeus's profits attributable to the infringement, or statutory damages, as provided by 17 U.S.C. § 504 and 15 U.S.C. §§ 1116-1117;

(c)    For treble damages for willful infringement pursuant to 15 U.S.C. § 1117(b);

(d)    For an accounting of all profits, income, receipts, or other benefits derived by Defendant as a result of its unlawful conduct;

(e)    For Plaintiff's costs and reasonable attorneys' fees to the full extent permissible under applicable law;

(f)    For pre- and post-judgment interest to the full extent permissible under applicable law; and

(g)    For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims and issues so triable.

Dated: February 3, 2025

BAUGHMAN KROUP BOSSE PLLC     KENDALL BRILL & KELLY LLP

By: */s/ George W. Kroup*            By: */s/ Philip M. Kelly*
George W. Kroup                    Philip M. Kelly (*pro hac vice forthcoming*)
Daniel A. Schwartz                 Matthew Bernstein (*pro hac vice forthcoming*)
One Liberty Plaza, Floor 46        Emma Tehrani (*pro hac vice forthcoming*)
New York, New York 10006           Amelia Bruckner (*pro hac vice forthcoming*)
(212) 548-3212                     Santa Monica Blvd., Suite 1725
gkroup@bkbfirm.com                 Los Angeles, California 90067
                                   (310) 556-2700
                                   pkelly@kbkfirm.com

                                   *Attorneys for Plaintiff Viacom International Inc.*