**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

VIACOM INTERNATIONAL INC.,

                              Plaintiff,

              - v. -

ZEUS NETWORKS, LLC; AND DOES 1 TO
10, INCLUSIVE.,

                              Defendants.

---

Case No. 1:25-cv-00973

**DEFENDANT ZEUS NETWORKS, LLC'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS**

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
**Jonathan D. Goins** (admitted pro hac)
600 Peachtree St NE, Suite 4700
Atlanta, Georgia 30308
(404) 991-2160

**Brian Pete**
77 Water Street, Suite 2100
New York, New York 10005
(212) 232-1300
*Attorneys for Defendant*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL ALLEGATIONS ................................................................................ 2

LEGAL STANDARD................................................................................ 4

ARGUMENT ................................................................................ 5

I.     Plaintiff's Copyright Claim (Count I) Should Be Dismissed Because
Merely Using Common Elements Of The Parties' Respective Shows
(Including One Actor) Are Not Copyrightable Offenses, Not To Mention
That Plaintiff Does Not Satisfy The Twombly Standard In Pleading Any
Infringement With Specificity. ................................................................................ 5

II.    Plaintiff's Trademark Infringement/Unfair Competition Claims
(Counts II, IV, VI and VII) Should Be Dismissed Because The
Allegations Fail To Apply The Likelihood Of Confusion Factors And
Lack Any Specificity. ................................................................................ 7

III.    Plaintiff's Trademark Claims (Counts II, IV, VI and VII) Should Be
Dismissed Based Upon The First Amendment Defense And/Or
*Rogers* Test. ................................................................................ 10

IV.    Plaintiff's Trade Dress Infringement Claim (Count III) Should Be
Dismissed Because the Look and Feel of a Television Show Does
Not Constitute A Protectible Trade Dress Right................................................................................ 13

V.    Plaintiff's Dilution Claims (Counts V and VIII) Should Be Dismissed
Because The Parties' Respective Marks Are Not "Virtually Identical"
And There Are Also Insufficient Facts to Support an Inference That
The Fame Of Plaintiff's Mark Extends Further Than The Sketch Comedy
Industry. ................................................................................ 14

VI.    Plaintiff's New York Consumer Protection Act (Count IX) Should
Be Dismissed Because It Is Preempted by Federal Law and the
Alleged Infringement Is Outside the Scope of The Statute. ................................................................................ 16

VII.    Plaintiff's Contractual Interference Claim (Count X) Should Be
Dismissed Because Plaintiff Fails to Identify Any Contract At-Issue,
Including Specifying Any Contractual Restrictions. ................................................................................ 17

VIII.    Discovery Should Be Stayed. ................................................................................ 18

CONCLUSION................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*1-800 Contacts, Inc. v. JAND, Inc.*,
  119 F.4th 234 (2d Cir. 2024) ...................................................8

*1-800 Contacts, Inc. v. WhenU.Com, Inc.*,
  414 F.3d 400 (2d Cir. 2005)....................................................8

*A&E Television Networks, LLC v. Big Fish Ent., LLC*,
  2023 WL 4053871 (S.D.N.Y. June 16, 2023) ...........................6

*A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*,
  No. 12 Civ. 4828, 2018 WL 1273343 (S.D.N.Y. Mar. 5, 2018) ...........................17

*Akiro LLC v. House of Cheatham, Inc.*,
  946 F. Supp. 2d 324 (S.D.N.Y. 2013).....................................14

*Alapaha v. Prodigy*,
  2021 WL 1893316 (S.D.N.Y. May 10, 2021) ..........................18

*Alvarado v. Mount Pleasant Cottage Sch. Dist.*,
  404 F.Supp.3d 763 (S.D.N.Y. 2019)......................................17

*AM General LLC v. Activision Blizzard, Inc.*,
  450 F.Supp.3d 467 (S.D.N.Y 2020).......................................11

*Arden v. Columbia Pictures Indus., Inc.*,
  908 F. Supp. 1248 (S.D.N.Y. 1995).........................................5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................4, 8

*Attia v. Society of the New York Hosp.*,
  201 F.3d 50 (2d Cir.1999).......................................................5

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007).........................................................4, 8

*Best Cellars, Inc. v. Wine Made Simple, Inc.*,
  320 F.Supp.2d 60 (S.D.N.Y. 2003) ........................................13

*Bethea v. Burnett*,
  2005 WL 1720631 (C.D. Cal. June 28, 2005) ...........................6

*Bubble Genius LLC v. Smith.*,
  239 F.Supp.3d 586 (E.D.N.Y. 2017) .....................................16

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002) ...................................................................................4

*Cole v. John Wiley & Sons, Inc.*,
  2012 WL 3133520 (S.D.N.Y. Aug. 1, 2012) ...........................................................6

*CT Espresso v. Lavazza*,
  2022 WL 1639485 (S.D.N.Y. May 24, 2022) .........................................................19

*In re Currency*,
  2002 WL 88278 (S.D.N.Y. Jan. 22, 2002) .............................................................18

*Dan—Foam A/S v. Brand Named Beds, LLC*,
  500 F. Supp. 2d 296 (S.D.N.Y. 2007) ...................................................................15

*DePinto v. Ashley Scott, Inc.*,
  222 A.D.2d 288, 635 N.Y.S.2d 215 (1995) ...........................................................16

*DiFolco v. MSNBC Cable L.L.C.*,
  622 F.3d 104 (2d Cir. 2010) ...................................................................................4

*DO Denim, LLC v. Fried Denim, Inc.*,
  634 F.Supp.2d 403 (S.D.N.Y.2009) .......................................................................16

*Dow Jones & Company, Inc. v. International Securities Exchange, Inc.*,
  451 F.3d 295 (2d Cir. 2006) ...................................................................................8

*Easy Spirit, LLC v. Skechers U.S.A., Inc.*,
  515 F. Supp. 3d 47 (S.D.N.Y. 2021) ................................................................7, 14

*Ello v. Singh*,
  531 F.Supp.2d 552 (S.D.N.Y.2007) .........................................................................4

*Eyal R.D. Corp. v. Jewlex N.Y. Ltd.*,
  784 F. Supp. 2d 441 (S.D.N.Y. 2011) ...................................................................16

*Faulkner v. Beer*,
  463 F.3d 130 (2d Cir. 2006) ...................................................................................4

*Fiber-Shield Indus. Inc. v. FabricShield Holdings, LLC*,
  2023 U.S. Dist. LEXIS 57520 (E.D.N.Y. Mar. 31, 2023) .....................................15

*Gayle v. Allee*,
  2021 WL 120063 (S.D.N.Y. Jan. 13, 2021) ......................................................8, 10

*Gayle v. Hearst Communs., Inc.*,
  2021 U.S. Dist. LEXIS 16451 (S.D.N.Y. Jan. 2021) ...............................................7

*Gucci America, Inc. v. Duty Free Apparel Ltd.*,
    277 F. Supp. 2d 269 (S.D.N.Y. 2003) ........................................................16

*Guzik v. Albright*,
    No. 16 Civ. 2257, 2018 WL 4386084 (S.D.N.Y. Sept. 14, 2018) ...........................17

*Heller Inc. v. Design Within Reach, Inc.*,
    2009 U.S. Dist. LEXIS 71991 (S.D.N.Y. Aug. 14, 2009) .....................................15

*Jackpocket, Inc. v. Lottomatrix NY LLC*,
    2022 WL 17733156 (S.D. N.Y. 2022) *aff'd* 2024 WL 1152520 (2d Cir. 2024) ....................14

*Jeffrey Milstein v. Gregor, Lawlor, Roth, Inc.*,
    58 F.3d 27 (2d Cir. 1995) .......................................................................13

*JTH Tax LLC v. AMC Networks Inc.*,
    694 F.Supp.3d 315 (S.D.N.Y. 2023) .........................................................11

*Kaufman & Fisher Wish Company, Ltd. v. F.A.O. Schwarz,*
    184 F.Supp.2d 311 (S.D.N.Y. 2001) ..........................................................13

*Kelly v. L.L. Cool J.*,
    145 F.R.D. 32 (S.D.N.Y. 1992) ...................................................................6

*Lang v. Ret. Living Pub. Co.*,
    949 F.2d 576 (2d Cir. 1991) .......................................................................9

*Latimore v. NBC Universal Telev. Studio*,
    480 F. App'x 649 (2d Cir. 2012) .................................................................5

*Lopez v. Bonanza.com, Inc.*,
    2019 WL 5199431 (S.D. N.Y. 2019) ............................................................8

*Louis Vuitton Malletier S.A. v. Dooney & Bourke, Inc.*,
    454 F.3d 108 (2d Cir. 2006) .......................................................................7

*Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.*,
    868 F. Supp. 2d 172 (S.D.N.Y. 2012) ...................................................10, 11

*Luv N' Care, Ltd. v. Regent Baby Prods. Corp.*,
    841 F. Supp. 2d 753 (S.D.N.Y. 2012) .........................................................15

*Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*,
    875 F.2d 1026 (2d Cir. 1989) ...................................................................14

*Medina v. Dash Films, Inc.*,
    2016 WL 3906714 (S.D.N.Y. Jul. 14, 2016) ..................................................10

*Miss Universe, L.P., LLLP v. Villegas*,
    672 F. Supp. 2d 575 (S.D.N.Y. 2009)....................................................14

*MMS Trading Co. Pty Ltd. v. Hutton Toys LLC*,
    20-CV-1360, 2021 WL 1193947 (E.D.N.Y. Mar. 29, 2021)..................17

*Moseley v. V Secret Catalogue, Inc.*,
    537 U.S. 418 (2003)..............................................................................14

*OffWhite Productions, LLC v. Off-White, LLC*,
    480 F.Supp.3d 558 (S.D.N.Y. 2020)......................................................8

*Peter F. Gaito Architecture, LLC v. Simone Development Corp.*,
    602 F.3d 57 (2d Cir. 2010)......................................................................5

*Piuggi v. Good for You Productions LLC*,
    739 F.Supp.3d 143 (S.D.N.Y. July 2024)...............................................6

*Pristine Indus., Inc. v. Hallmark Cards, Inc.*,
    753 F. Supp. 140 (S.D.N.Y. 1990) ..........................................................7

*Pulse Creations, Inc. v. Vesture Grp., Inc.*,
    154 F. Supp. 3d 48 (S.D.N.Y. 2015).......................................................7

*Red Wing Prods., v. Am. Broadcasting-Paramount Theatres, Inc.*,
    213 N.Y.S.2d 315 (1961)......................................................................18

*Rodriguez v. Heidi Klum Co., LLC*,
    2008 WL 4449416 (S.D.N.Y. Sept. 30, 2008).........................................5

*Rogers v. Grimaldi*,
    875 F.2d 994 (2d Cir. 1989).......................................................10, 11, 12

*Savin Corp. v. Savin Group*,
    391 F.3d 439 (2d Cir. 2004)..................................................................14

*Saxon Glass Technologies, Inc. v. Apple Inc.*,
    393 f.Supp.3d 270 (W.D.N.Y. 2019)......................................................7

*Schutte Bagclosures Inc. v. Kwik Lok Corp.*,
    48 F. Supp. 3d 675 (S.D.N.Y. 2014)....................................................15

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,
    736 F.3d 198 (2d Cir. 2013)..................................................................14

*Technomarine SA v. Jacob Time, Inc.*,
    2012 WL 2497276 (S.D.N.Y. June 22, 2012) .........................................7

*Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC,*
    221 F.Supp.2d 410 (S.D.N.Y.2002)........................................................16

*TufAmerica v. Diamond,*
    968 F. Supp. 2d 588 (S.D.N.Y. 2013)......................................................5

*Twin Peaks Productions, Inc. v. Publications Intern., Ltd.,*
    996 F.2d 1366 (2d Cir. 1993)................................................................11

*Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., LLC,*
    455 F.App'x 102 (2d Cir. 2012).............................................................17

*Walker v. Time Life Films, Inc.,*
    784 F.2d 44 (2d Cir. 1986).....................................................................6

*Warren v. John Wiley & Sons, Inc.,*
    952 F.Supp.2d 610 (S.D.N.Y. 2013)........................................................6

*Williams v. A &E Television Networks,*
    122 F.Supp.3d 157 (S.D.N.Y. 2015)........................................................5

*Williams v. Crichton,*
    84 F.3d 581 (2d Cir. 1996).....................................................................5

**Statutes**

N.Y. Consumer Protection Act § 349 ........................................................16

N.Y. Consumer Protection Act § 350 ........................................................16

N.Y. Gen. Bus. Law § 360.........................................................................16

**Rules**

F.R.C.P. 26(c) ..........................................................................................18

Rule 12(b)(6)......................................................................................1, 4, 8

## PRELIMINARY STATEMENT

Defendant Zeus Networks, LLC ("Defendant" or "Zeus") submits this memorandum of law in support of its motion for an order, pursuant to Rule 12(b)(6), dismissing all Counts of the Complaint of Plaintiff Viacom International, Inc. ("Plaintiff" or "Viacom") for failure to state a claim upon which relief can be granted.  Plaintiff's Count I (Copyright Infringement) should be dismissed because common ideas, concepts and elements of a television show (including an actor) are not copyrightable.  Counts II, IV, VI and VII (Trademark Infringement/Unfair Competition) should be dismissed because Plaintiff fails to assert factual allegations of the likelihood of confusion factors or other confusingly similar activity between the parties' respective shows, namely "Bad vs. Wild" and "Wild 'N Out."  Counts V and VIII (Dilution) should be dismissed because the parties' respective marks or television names are not "identical" or "substantially" similar, and Plaintiff failed to plead that "Wild 'N Out" is famous.  Count IX (New York Consumer Protection Act) should be dismissed because (a) Plaintiff is not a consumer, and thus, lacks standing, and (b) the Act does not recognize trademark-based consumer confusion as a type of violation.  Count X (Tortious Interference) should be dismissed because Plaintiff has not identified what, if any, contract that Defendant is to have been aware of or that was disclosed to it so as to have any specific knowledge about Plaintiff's so-called terms with "Nick Cannon's contract with Viacom."  [Pl.'s Compl. ¶124.]  Moreover, even if Plaintiff were to amend the Complaint, Plaintiff's trademark claims are barred under the First Amendment-*Rogers* test.  Other than cursory and conclusory allegations, there are no facts, nor could there be, to supply the required well-pleaded allegations under the *Twombly* standard and the case should be dismissed.

1

## FACTUAL ALLEGATIONS

Plaintiff is a streaming and entertainment company. [Compl. ¶10]. Plaintiff further asserts it is the sole owner of the intellectual property of the improvisational competition show, Wild 'N Out. [Compl. ¶23]. The show is hosted by Nick Cannon and is comprised of teams who compete in creative challenges that blend comedy and hip hop. [Compl. ¶18]. The cast members and guest stars engage in spontaneous comedic competitions and games, often involving quick wit and humor, showcasing the performers' ability to think on their feet. [Compl. ¶20]. In order to strategically exaggerate the scope of the alleged infringements at issue, the Complaint emphasizes the distinctive elements that create Wild N' Out's "unique entertainment experience," namely its improvisational comedy, host, hip-hop and music integration, celebrity guests, team-based competitions, audience interaction and scoring, themed seasons and episodes, visual and graphic elements, its mood, pace and tone, and its variety of game. [Compl. ¶¶20, 38]. Wild 'N Out has 21 seasons, with more than 302 episodes. [Compl. ¶¶21, 23].

Defendant is an entertainment streaming platform providing scripted and unscripted content. [Compl. ¶29].[1] As described by Plaintiff, Defendant's show, "Bad vs. Wild" is an outrageous, mostly female series full of challenges, competitions and showdowns with the goal of

---

[1] Plaintiff takes liberty to make several mischaracterizations regarding how it believes "Zeus has come under fire" based upon two hearsay, unauthenticated and unreliable online sources. [Compl. ¶29. Defendant believes this entire lawsuit was motivated by corporate greed, and the fact that Plaintiff is losing cable subscribers given the proliferation of content being distributed directly to online platforms such as Zeus. See, e.g., Justin Klawans, *The Spiraling Chaos At Paramount*, The Week US, (June 18, 2024) (publicly available at https://theweek.com/entertainment/paramount-chaos-business); Lucas Shaw (Bloomberg), *Viacom Sinks As MTV Owner Sees More Subscriber Losses Ahead*, NewsTimes (Aug. 4, 2017) (publicly available at https://www.newstimes.com/business/article/Viacom-sinks-as-MTV-owner-sees-more-subscriber-11734022.php); Lucas Shaw, Felix Gillette, *Viacom Is Having A Midlife Crisis*, Bloomberg (July 1, 2015) (publicly available https://www.bloomberg.com/graphics/2015-viacom-mtv-sumner-redstone/).

settling preexisting beefs. [Compl. ¶33(g)].  The series features cast members from other Zeus shows like "Baddies", "Joseline's Caberet", "Aunt Tea Podcast", etc. The main objective of the show is for a live audience to determine which team of women are the "baddest" or the "wildest." [Compl. ¶40]. Defendant has aired merely ten episodes of the show "Bad vs. Wild" on its network, comprised into just one season. [Id.].

Plaintiff makes reference to one of Zeus's shows, namely "Baddies." [Compl. ¶29].  As recognized in several publicly available trademark records, Zeus is the owner of common law and federal trademark rights regarding "BADDIES" related trademarks with variations of "BADDIES" with a geographical descriptive term, including, *inter alia*, "Baddies ATL," "Baddies South," "Baddies Caribbean," "Baddies West," "Baddies Midwest,"  "Baddies East," "Baddies Canada," "Baddies Africa," "Baddies Europe," and "Baddies UK."[2] Zeus's "Bad vs. Wild" show is simply a derivative spin-off of its longstanding usage of "Baddies" shows.

Without specifying particular copyright or trademark registrations, Plaintiff asserts broadly that Zeus has infringed on Wild 'N Out's creative expression and its registered trademarks, including its logo and set design. [Compl. ¶5]. In a vague and conclusory manner, Plaintiff asserts that "Zeus's collaboration with Mr. Cannon in developing 'Bad vs. Wild' further cements the conclusion that 'Bad vs. Wild' intentionally ripped off 'Wild 'N Out' to profit off its creative elements." [Compl. ¶4]. To assert such allegations is a stretch, considering that there is no

---

[2] "Baddies West" (Registration No. 7220248) (Entertainment services in the nature of an ongoing reality based television program); "Baddies Caribbean" (Application Serial No. 98/380,337) (same service); "Baddies Midwest" (Application Serial No. 98/652,870) (same);  "Baddies East" (Application Serial No. 98/184,635) (same); "Baddies Canada" (Application Serial No. 99/025,112) (same); "Baddies Africa" (Serial No. 98/965,902) (same); "Baddies Europe" (Application Serial No. 99/025,145) (same); "Baddies UK" (Serial No. 99/025,132) (same).

suggestion of an exclusivity provision anywhere within the Complaint that would prevent Zeus from working with Mr. Cannon.

## **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain a sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When a complaint fails to demonstrate a plausible claim to relief, it should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *See, e.g., Iqbal*, 556 U.S. at 679 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). In determining whether a complaint states a plausible claim for relief, the reviewing court may draw on its judicial experience and common sense. *Id*. While the court should accept as true all allegations in the complaint and the reasonable inferences that can be drawn from them, the court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 at 679. In fact, the court may disregard such legal conclusions when the complaint includes only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Twombly*, 550 U.S. at 678–79. Simply put, under the Supreme Court's guiding jurisprudence of the *Twombly* and *Iqbal* decisions, a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 557; *see also Ello v. Singh*, 531 F.Supp.2d 552, 562 (S.D.N.Y.2007) (*quoting Twombly*). And a complaint that tenders "naked assertions" devoid of further factual enhancement will not suffice. *Twombly*, 550 U.S. at 557; *Iqbal*, 556 U.S. at 678.[3]

---

[3] In considering a motion to dismiss for failure to state a claim, a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint; where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint. Fed. R. Civ. P. 12(b)(6). *See also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)

## ARGUMENT

**I.      Plaintiff's Copyright Claim (Count I) Should Be Dismissed Because Merely Using Common Elements Of The Parties' Respective Shows (Including One Actor) Are Not Copyrightable Offenses, Not To Mention That Plaintiff Does Not Satisfy The Twombly Standard In Pleading Any Infringement With Specificity.**

Copyright infringement is not actionable if the copying is so trivial that it is below the quantitative threshold for substantial similarity and actionable infringement. *TufAmerica v. Diamond*, 968 F. Supp. 2d 588, 599 (S.D.N.Y. 2013). When analyzing similarity, courts consider similarity of the expression in the parties' works, not similarity of ideas. *Peter F. Gaito Architecture, LLC v. Simone Development Corp.*, 602 F.3d 57, 67 (2d Cir. 2010). In this case, Plaintiff's Complaint asserts generally that Zeus's "Bad vs. Wild" show has similar ideas, format, creative elements, lighting design, and plots as "Wild 'N Out" and that its host and talent overlap. [Compl. ¶¶33-35.]  But ideas and concepts are not protected from copying.  *Attia v. Society of the New York Hosp.*, 201 F.3d 50, 54 (2d Cir.1999). Generalized plots are not entitled to copyright protection. *See Arden v. Columbia Pictures Indus., Inc.*, 908 F. Supp. 1248, 1261 (S.D.N.Y. 1995); *Williams v. A &E Television Networks*, 122 F.Supp.3d 157, 163 (S.D.N.Y. 2015) (Plaintiff did not own an enforceable copyright in the general idea of a reality show about arranged marriages between strangers because it consisted of nothing but "common stock ideas" and "scènes à faire"); *Latimore v. NBC Universal Telev. Studio*, 480 F. App'x 649, 651 (2d Cir. 2012) (finding no substantial similarity where both TV shows used the same "staples of reality television" and "common elements" such as "team-based competition, elimination, and communal living").[4]

---

[4] *See also Rodriguez v. Heidi Klum Co., LLC*, 2008 WL 4449416 at *5 (S.D.N.Y. Sept. 30, 2008) (noting "the use of a panel of judges composed of fashion industry experts, a design workroom with sewing machines, a specific number of contestants, professional models, hairstylists, make-up artists, weekly episodes and the setting of New York . . . all necessarily flow from the uncopyrightable idea of a fashion design reality show") (citing *Williams v. Crichton*, 84 F.3d 581, 589 (2d Cir. 1996) (finding that electric fences, automated tours, dinosaur nurseries, and uniformed

Here, Viacom's argument that Zeus appropriated its intellectual property, including its host and talent overlap, is meritless. [Compl. ¶33(c)].  "One cannot own a copyright in an individual." *See A&E Television Networks, LLC v. Big Fish Ent., LLC*, 2023 WL 4053871, at *12 (S.D.N.Y. June 16, 2023); *Piuggi v. Good for You Productions LLC*, 739 F.Supp.3d 143 (S.D.N.Y. July 2024) (Piuggi's idea to cast his "friend" Morosky is likewise not protected by copyright).[5] Plaintiff alleges that "Bad vs. Wild" is substantially similar to Wild 'N Out and precludes the possibility that Zeus independently created its own work. [Compl. ¶56].  Viacom does nothing but assert Zeus copied its "overall format and structure of Wild 'N Out, the arrangements and elements, its game concepts and rules, and characters." [Compl. ¶¶4, 54]. However, these are common elements of many reality TV game shows that do not reach the level of copyrightable expression, and thus, are not protected by copyright.

Moreover, in a claim for copyright infringement, it is required that any particular infringing acts be set out with some specificity. *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36, n. 3 (S.D.N.Y. 1992). Courts require that plaintiffs plead which specific original works are the subject of the copyright claim to ensure that defendants have adequate notice of the identity of the copyrights infringed. *Warren v. John Wiley & Sons, Inc.*, 952 F.Supp.2d 610, 616 (S.D.N.Y. 2013). A plaintiff may fail to meet this requirement if the Complaint "bases an infringement claim on overly-inclusive lists of copyrighted works" that amount to "vague and expansive allegations regarding which works are the subject of [p]laintiff's claims." *Cole v. John Wiley & Sons, Inc.*, 2012 WL 3133520, at *12

---

workers are typical scènes à faire that flow from the uncopyrightable idea of a dinosaur zoo); *Walker v. Time Life Films, Inc*., 784 F.2d 44, 50 (2d Cir. 1986) (finding that elements such as drunks, prostitutes, vermin and derelict cars would appear in any realistic work about the work of policemen in the South Bronx and are therefore unprotectable stock concepts).

[5]  *Bethea v. Burnett*, 2005 WL 1720631, at *13 (C.D. Cal. June 28, 2005) ("Plaintiffs cannot copyright the idea of having a well-known business leader, or even more specifically Donald Trump, host a reality television program.")

(S.D.N.Y. Aug. 1, 2012) (dismissing copyright infringement claims where plaintiff provided multiple pages of charts listing 66 photograph works but alleging neither that all the copyrights were infringed nor any specific one was). Failure to enumerate specifically the allegedly infringed works is generally fatal to a copyright claim. *Id.* at *12.

Here, Viacom fails to specify which specific copyright registrations were infringed upon. Instead, the Complaint overwhelmingly lists over 302 registrations, merely asserting that "Zeus had access to Viacom's copyrighted works" but fails to state with specificity which episodes were infringed. [Compl. ¶¶53, 55]. Such omission further speaks to Count I being insufficiently pled.

## II.    Plaintiff's Trademark Infringement/Unfair Competition Claims (Counts II, IV, VI and VII) Should Be Dismissed Because The Allegations Fail To Apply The Likelihood Of Confusion Factors And Lack Any Specificity.

Under New York law, claims of trademark infringement "are adjudged using the same standard" as Lanham Act infringement claims. *Easy Spirit, LLC v. Skechers U.S.A., Inc*., 515 F. Supp. 3d 47, 70 (S.D.N.Y. 2021); *Pulse Creations, Inc. v. Vesture Grp., Inc*., 154 F. Supp. 3d 48, 54 (S.D.N.Y. 2015) ("The elements of trademark infringement under New York law mirror those for the Lanham Act, and as a result these claims may be analyzed together.").  Likewise, the elements of a common-law unfair competition claim are "virtually identical" to those for an unfair competition claim under the Lanham Act. *Technomarine SA v. Jacob Time, Inc*., 2012 WL 2497276, at *5 (S.D.N.Y. June 22, 2012).  Claims under the unfair competition provision of the Lanham Act are considered trademark infringement and are evaluated in the same way. *Gayle v. Hearst Communs., Inc*., 2021 U.S. Dist. LEXIS 16451, at *7 (S.D.N.Y. Jan. 2021) (citing *Louis Vuitton Malletier S.A. v. Dooney & Bourke, Inc*., 454 F.3d 108, 114 (2d Cir. 2006)).  All require proving the likelihood of confusion factors.  *Saxon Glass Technologies, Inc. v. Apple Inc*., 393 f.Supp.3d 270 (W.D.N.Y. 2019) (citing *Pristine Indus., Inc. v. Hallmark Cards, Inc*., 753 F. Supp. 140, 144 (S.D.N.Y. 1990) ("Likelihood of confusion is a 'common element' of federal trademark

infringement, federal unfair competition, common-law trademark infringement, and common-law unfair competition claims.").

Notably, a bare-bones pleading of legal conclusions for a count for trademark infringement or dilution will not survive a Rule 12(b)(6) motion to dismiss. *Dow Jones & Company, Inc. v. International Securities Exchange, Inc.*, 451 F.3d 295, 307–308 (2d Cir. 2006) (As to the trademark claims, plaintiff's complaint, 'consists of conclusory allegations unsupported by factual assertions').[6] Instead, to prevail on a trademark infringement claim under the Lanham Act, a plaintiff must demonstrate that the defendant's use of the mark at issue is likely to cause confusion for a large number of purchasers as to the "affiliation, connection or association of defendant with plaintiff, or as to the origin, sponsorship, or approval of the defendant's goods, services, or commercial activities by plaintiff." *1-800 Contacts, Inc. v. WhenU.Com, Inc*., 414 F.3d 400, 407 (2d Cir. 2005); *OffWhite Productions, LLC v. Off-White, LLC*, 480 F.Supp.3d 558, 565 (S.D.N.Y. 2020) (motion to dismiss granted because trademark holder failed to plausibly allege likelihood of confusion between the plaintiff's product and those of the alleged infringer as the complaint did not specify a single instance in which a consumer evinced confusion between the products).[7]

Even if the phrases are similar, at best, the use of a common phrase is not a trademark violation absent some showing that the use of that phrase will cause confusion. *Gayle v. Allee*, 2021 WL 120063, at *4 (S.D.N.Y. Jan. 13, 2021) (Court granted defendants' motion to dismiss by rejecting arguments made regarding similarity of the marks and closeness of products in which

---

[6] *See also Lopez v. Bonanza.com, Inc*., 2019 WL 5199431, *13 (S.D. N.Y. 2019) (granting Rule 12(b)(6) motion to dismiss case for trademark infringement); *1-800 Contacts, Inc. v. JAND, Inc*., 119 F.4th 234, 255 (2d Cir. 2024) (the pleadings failed to plausibly allege that consumers were likely to be confused by the defendant's actions)..

[7] Since the Supreme Court decisions in *Twombly* and *Iqbal*, a growing number of courts have dismissed a trademark infringement complaint on a Rule 12(b)(6) motion when the allegations of a likelihood of confusion are implausible in view of the facts alleged.

plaintiff asserted "ART WE ALL" and "ART WE ALL ONE" caused customer confusion sufficient to state a claim for trademark infringement); *Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 581-82 (2d Cir. 1991) (concluding that two designations were not substantially similar so as to cause confusion because although they both used the words "New Choices," one "always includes the word 'Press,' whereas" the other party's "mark always includes the words 'For The Best Years'").

Here, Plaintiff has asserted allegations that largely demonstrate differences between the names of the parties' respective shows. But there are virtually hundreds of co-existing trademarks for entertainment services that incorporate generic and descriptive terms like "bad" or "wild." Extensive third-party marks in the public eye creates little doubt of any confusion to satisfy any claim of trademark infringement or unfair competition.[8]  Viacom's Complaint is entirely lacking any factual allegation that suggests consumers believe "Bad vs. Wild" is affiliated with "Wild 'N Out" or that the public is somehow confused between the parties' respective marks.

Moreover, Plaintiff asserts that "virtually every episode" of "Bad vs. Wild" contains several instances of offensive and inappropriate content that glorifies violence, objectifies women, and perpetuates insidious stereotypes."  [Compl. ¶42].  Plaintiff asserts that the show at-issue depicts "[m]assive brawls" and "[v]ulgar and graphic commentary by participants[,]" which

---

[8] See, e.g., NICE & WILD in U.S. Registration No. 5,377,914 (entertainment services in the nature of presenting live musical performances); WENDELL & WILD in U.S. Registration No. 6,980,714 (entertainment services in the nature of production and distribution of multimedia entertainment content); WILD & BLUE in U.S. Registration No. 6,254,318 (entertainment, namely, live performances by a musical band); WILD & SUBLIME in U.S. Registration No. 6,186,705 (entertainment services, namely, presentation of live show performances featuring commentary); WHO'S BAD in U.S. Registration No. 4,334,803 (entertainment services in the nature of live musical performances); BAD RABBITS in U.S. Registration No. 3,845,056 (entertainment in the nature of live performances by a musician or musicians); SUMMERTIME BAD in U.S. Registration No. 7,046,704 (Entertainment services in the nature of live musical performances).

among other things, "starkly contrasts with the good-natured humor of "Wild 'N Out" and risks tarnishing its reputation by affiliation." [Id. at ¶¶43-44]. Assuming these facts are deemed true, at least for pleading purposes, then Plaintiff's trademark claims assert the opposite of a trademark claim, i.e., a lack of confusion. Plaintiff's trademark claims are devoid of specificity and fail to state with particular any of the likelihood of confusion factors.

### III.    Plaintiff's Trademark Claims (Counts II, IV, VI and VII) Should Be Dismissed Based Upon The First Amendment Defense And/Or *Rogers* Test.

Even if the Court finds that Plaintiff has pled its trademark claims, they are barred by the First Amendment.[9] The First Amendment protects the use of a trademark in an artistic work against claims of trademark infringement. *Rogers v. Grimaldi*, 875 F.2d 994, 998 (2d Cir. 1989) (under the *Rogers* test, both the physical artistic work and title of an artistic work are entitled to First Amendment protection); *see also Gayle*, 2021 WL 120063, at *19 ("the Second Circuit has recognized that because overextension of Lanham Act restrictions in the area of titles might intrude on First Amendment values, courts must construe the Act narrowly to avoid such conflict") (citing *Rogers*, 875 F.2d 994 at 998). In other words, the threshold for artistic relevance is intentionally low and will be satisfied unless the use has no artistic relevance to the underlying work whatsoever. *Id.* at 998.

The First Amendment defense to a trademark infringement claim is primarily evaluated using the *Rogers* test, which balances the public interest in free expression against the public

---

[9] Several courts have found that the question of First Amendment Protection in properly addressed at the motion to dismiss stage. *Gayle*, 2021 WL 120063, at *19; *Medina v. Dash Films, Inc.*, 2016 WL 3906714, at *5 (S.D.N.Y. Jul. 14, 2016); *Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.,* 868 F. Supp. 2d 172, 183 (S.D.N.Y. 2012) (motion to dismiss was granted because defendant's use of plaintiff's Diophy bag in its film was protected by the First Amendment where its use of the trademark was not arbitrarily chosen just to exploit the publicity value of plaintiff's mark but instead had genuine relevance to the film's story).

interest in avoiding consumer confusion. *Rogers*, 875 F.2d at 999 (Where the defendant's product is artistic or expressive, courts have interpreted the Lanham Act narrowly in order to avoid suppressing protected speech under the First Amendment). Under the *Rogers* test, the title of an expressive work does not violate the Lanham Act unless the title has no artistic relevance to the underlying work, or, if it has some artistic relevance, unless the title explicitly misleads as to the source or the content of the work. *JTH Tax LLC v. AMC Networks Inc.,* 694 F.Supp.3d 315, 333 (S.D.N.Y. 2023) (motion to dismiss was granted where infringer's use of "Sweet Liberty Tax Services" mark had artistic relevance and was not misleading, and thus, plaintiff's Lanham Act claims were barred by the First Amendment free expression clause).[10]

If the contested use has artistic relevance, then the Court must proceed to the second prong of the Rogers test and determine whether the use "explicitly misleads as to the source or the content of the work." *Rogers*, 875 F.2d at 999. It is not enough that a likelihood of confusion exists; rather, "the finding of likelihood of confusion must be particularly compelling to outweigh the First Amendment interest recognized in *Rogers*." *Twin Peaks Prods*., 996 F.2d at 1379. Moreover, "in the context of a motion to dismiss, courts have disposed of trademark claims where simply looking at the work itself, and the context in which it appears, demonstrates how implausible it is that a viewer will be confused into believing that the plaintiff endorsed the defendant's work (and without relying on the likelihood of confusion factors to do so)[.]" *Louis Vuitton Malletier S.A. v. Warner*

---

[10] *AM General LLC v. Activision Blizzard, Inc*., 450 F.Supp.3d 467, 488 (S.D.N.Y 2020) (First Amendment barred trademark infringement claims because video game developers' use of "Humvees" in military warfare video games had artistic relevance as it provided a sense of realism to players and was not explicitly misleading); *Twin Peaks Productions, Inc. v. Publications Intern., Ltd*., 996 F.2d 1366, 1379 (2d Cir. 1993) (Court extended the *Rogers* test to literary titles beyond those using a celebrity's name and held it was not enough that a likelihood of confusion existed; rather, "the finding of likelihood of confusion must [have been] particularly compelling to outweigh the First Amendment.").

*Bros. Entm't Inc.,* 868 F. Supp. 2d 172, 183 (S.D.N.Y. 2012) (Defendant's use of Louis Vuitton's Diophy bag was protected under *Rogers* because it had artistic relevance to the film and was not explicitly misleading).

Here, Defendant's mark satisfies both elements of the *Rogers* test. Zeus's "Bad vs. Wild" title is expressive and artistic in nature and depicts what the show is about: drama, chaos, and outrageous fights. [Compl. ¶43].  Thus, it is clear that the show's name has genuine relevance to its scope and is artistic.

Proceeding to the second prong of the *Rogers* test, the Defendant's mark is not misleading. Any consumer familiar with Zeus's platform and the shows it offers understands that the show involves a team of "bad" girls competing against a team of "wild" ones.  For example, and as Plaintiff referenced, Zeus has several series of its show "Baddies," including, *inter alia*, "Baddies ATL," "Baddies South," "Baddies Caribbean," "Baddies West," "Baddies Midwest" and "Baddies East." In fact, many of the cast members in "Bad vs. Wild" are also cast members in the "Baddies" series. Thus, it is evident that the "Bad vs. Wild" show is simply a derivative spin-off of its longstanding usage of "Baddies" shows. Zeus's reference to Wild 'N Out does not "explicitly mislead as to the source or the content of the work." *Rogers*, 875 F.2d at 999. Instead, it merely speaks to the obvious difference between the parties' respective two shows.  Zeus did not reference the "Wild 'N Out" name in order to mislead consumers into believing that Viacom produced or endorsed "Bad vs. Wild." Whether or not Viacom agrees with Defendant's view, or the expression of it, this is precisely the type of expression of ideas that the First Amendment is designed to protect and the Complaint fails to allege the type of confusion that could potentially overcome the *Rogers* protection.

Thus, Counts II, IV, VI and VII should be dismissed.

IV.    **Plaintiff's Trade Dress Infringement Claim (Count III) Should Be Dismissed Because the Look and Feel of a Television Show Does Not Constitute A Protectible Trade Dress Right.**

Viacom is alleging trade dress over the "look and feel" of Wild 'N Out. [Compl. ¶68]. However, trade dress rights generally does not protect the overall "look and feel" of a show itself. *Jeffrey Milstein v. Gregor, Lawlor, Roth, Inc.*, 58 F.3d 27, 32 (2d Cir. 1995) (trade dress law does not protect an idea, a concept, or a generalized type of appearance). Generally, courts exercise caution when extending trade dress protection to avoid stifling competition and monopolizing functional or generic elements. *Id.* (Plaintiff's trade dress could not qualify for trade dress protection because plaintiff was seeking protection for an idea or concept—die-cut photographic greeting cards, and it was clear that "the first manufacturer to create a die-cut photographic product could not have claimed trade dress protection for all die-cut photographic designs, since a trade dress described as consisting solely of die-cut photographs would simply refer to the genus of which the particular product is a species.").

Contrary to Plaintiff's belief, Wild 'N Out's stage setup, format, and visual appearance do not constitute protectable trade dress. All of these attributes speak to the look and feel of the entire show, and thus, cannot be protected as a trade dress right.[11]    Therefore, Count III must be dismissed.

---

[11] *Kaufman & Fisher Wish Company, Ltd. v. F.A.O. Schwarz*, 184 F.Supp.2d 311 (S.D.N.Y. 2001) (Trade dress law requires a precise articulation of the specific elements that comprise the distinct trade dress. General descriptions or broad categories are insufficient to state a claim for trade dress infringement); *see also Best Cellars, Inc. v. Wine Made Simple, Inc.*, 320 F.Supp.2d 60 (S.D.N.Y. 2003)).

**V.     Plaintiff's Dilution Claims (Counts V and VIII) Should Be Dismissed Because The Parties' Respective Marks Are Not "Virtually Identical" And There Are Also Insufficient Facts to Support an Inference That The Fame Of Plaintiff's Mark Extends Further Than The Sketch Comedy Industry.**

First and foremost, for an actionable dilution claim to survive, the parties' respective marks at-issue should be "identical." *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 433 (2003) (The Supreme Court held that mental association of a junior mark with a famous mark is not enough to establish actionable dilution if the marks are not identical); *Savin Corp. v. Savin Group*, 391 F.3d 439, 453 (2d Cir. 2004) (it cannot be overstated in that for the presumption of dilution to apply, the marks must be identical).  Mere similarity, even if close, is insufficient to establish per se evidence of dilution. *Id.* at 453. Without the parties' respective marks being identical, a likelihood of impairment of the distinctiveness of the famous mark is not possible.  The Second Circuit has emphasized that similarity of the marks "is an integral element" because dilution cannot be possible without a substantial similarity of the marks. Indeed, the Circuit affirmed a finding of no dilution where the marks were only "minimally similar*." Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 736 F.3d 198, 211 (2d Cir. 2013) (finding STARBUCKS versus CHARBUCKS to be only "minimally similar" and, therefore, no dilution was proven); *Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026, 1029 (2d Cir. 1989) (Accused mark LEXUS (for luxury auto) and the mark LEXIS (for legal search services) were found to be not "substantially" similar for a viable claim of dilution); *Miss Universe, L.P., LLLP v. Villegas*, 672 F. Supp. 2d 575, 596 (S.D.N.Y. 2009) (no dilution under New York law because the marks were not substantially similar); *in accord, Akiro LLC v. House of Cheatham, Inc.*, 946 F. Supp. 2d 324, 342 (S.D.N.Y. 2013); *Easy Spirit, LLC v. Skechers U.S.A., Inc.*, 515 F. Supp. 3d 47, 77 (S.D.N.Y. 2021) (New York anti-dilution law requires that the marks are "substantially similar," which means "more than the familiar test of similarity used in the traditional infringement context"); *Jackpocket, Inc. v.*

14

*Lottomatrix NY LLC*, 2022 WL 17733156, *57 (S.D. N.Y. 2022) *aff'd* 2024 WL 1152520 (2d Cir. 2024) (no dilution under New York law as not only was the plaintiff's mark not sufficiently well-known, but the marks were not similar enough).  Here, the parties' respective marks are, at best, only minimally similar.

Second, Viacom has not adequately pleaded the fame of its mark. To state a claim for trademark dilution under the Lanham Act, the plaintiff must allege: "[i] its mark is famous; [ii] the defendant's use of the mark is made in commerce; [iii] the defendant used the mark after the mark was famous; and [iv] the defendant's use of the mark is likely to dilute the quality of the mark by blurring or tarnishment." *Schutte Bagclosures Inc. v. Kwik Lok Corp*., 48 F. Supp. 3d 675, 702 (S.D.N.Y. 2014).  The statute's use of "the phrase 'widely recognized by the general consuming public of the United States was intended to reject dilution claims based on niche fame, i.e. fame limited to a particular channel of trade, segment of industry or service, or geographic region.'" *Fiber-Shield Indus. Inc. v. FabricShield Holdings, LLC*, 2023 U.S. Dist. LEXIS 57520, at *19 (E.D.N.Y. Mar. 31, 2023); *Luv N' Care, Ltd. v. Regent Baby Prods. Corp*., 841 F. Supp. 2d 753, 757-58 (S.D.N.Y. 2012) (quoting *Dan—Foam A/S v. Brand Named Beds, LLC*, 500 F. Supp. 2d 296, 307 n.90 (S.D.N.Y. 2007)).

As in this case, courts have held comparable allegations insufficient to plead fame. *Heller Inc. v. Design Within Reach, Inc*., 2009 U.S. Dist. LEXIS 71991, at *4 (S.D.N.Y. Aug. 14, 2009) (finding a mark was not famous where it was only alleged to be "well known to the 'relevant public interested in contemporary furniture'"); *Luv N' Care*, 841 F. Supp. 2d at 757 (dismissing dilution claim when "[a]t best, plaintiffs plead fame among baby product consumers"). Plaintiff has not pleaded facts supporting an inference that its mark's fame extends further than the niche sketch

comedy industry and fails to specify whether such fame relates to the consuming public at large. [Compl. ¶28]. Thus, Count V should be dismissed.

In any event, Plaintiff's conclusory allegations that supposedly support these claims solely relate to Defendant's alleged copying of its purported intellectual property rights. Therefore, the claims are all preempted. *Bubble Genius LLC v. Smith.*, 239 F.Supp.3d 586, 604 (E.D.N.Y. 2017) (dismissing claims brought pursuant to Section 360 where the claims were solely based on the defendant's alleged copying of its design); *Eyal R.D. Corp. v. Jewlex N.Y. Ltd.*, 784 F. Supp. 2d 441, 449 (S.D.N.Y. 2011) (dismissing claim brought pursuant to N.Y. Gen. Bus. Law § 360 because the basis for the claim was the copying of plaintiff's trade dress).

## VI.    Plaintiff's New York Consumer Protection Act (Count IX) Should Be Dismissed Because It Is Preempted by Federal Law and the Alleged Infringement Is Outside the Scope of The Statute.

Courts in New York have routinely dismissed trademark claims brought under Sections 349 and 350 as being outside the scope of the statutes because ordinary trademark disputes do not "pose a significant risk of harm to the public health or interest" and are therefore not the type of deceptive conduct that the statutes were designed to address. *Gucci America, Inc. v. Duty Free Apparel Lt*d., 277 F. Supp. 2d 269, 272-73 (S.D.N.Y. 2003) ("Claims that arise out of a trademark infringement action, and disputes between competitions where the core of the claim is harm to another business as opposed to consumers, both constitute situations which courts have found to reflect a public harm that is too insubstantial to satisfy the pleading requirements of § 349."); *DePinto v. Ashley Scott, Inc*., 222 A.D.2d 288, 635 N.Y.S.2d 215, 217 (1995); *DO Denim, LLC v. Fried Denim, Inc*., 634 F.Supp.2d 403, 409 (S.D.N.Y.2009); *Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F.Supp.2d 410, 413 n. 2 (S.D.N.Y.2002) ("[T]he majority [of courts] have held that trademark cases are outside the scope of this general consumer protection statute.").

Here, the alleged "deceptive acts of practices" asserted in this case are precisely the acts that constitute the alleged trademark infringement, which are outside the scope of the statute. [Compl. ¶¶116-118]. Accordingly, Plaintiff lacks standing and this claim fails as a matter of law and must be dismissed.

**VII.    Plaintiff's Contractual Interference Claim (Count X) Should Be Dismissed Because Plaintiff Fails to Identify Any Contract At-Issue, Including Specifying Any Contractual Restrictions.**

To state a claim for tortious interference with contract, a "plaintiff must identify the specific third-party contract with which the defendant allegedly interfered." *MMS Trading Co. Pty Ltd. v. Hutton Toys LLC*, 20-CV-1360, 2021 WL 1193947, at *12 (E.D.N.Y. Mar. 29, 2021) (citing *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., LLC*, 455 F.App'x 102, 104 (2d Cir. 2012)). It is not enough to describe the contract in general terms; "it is imperative that, in bringing a tortious interference claim, a plaintiff identify 'the relevant terms of the contract that existed' that were breached by defendant." *Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F.Supp.3d 763, 791 (S.D.N.Y. 2019).   A defendant's general awareness that the plaintiff did business with third parties is not enough. *See A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, No. 12 Civ. 4828, 2018 WL 1273343, at *11 (S.D.N.Y. Mar. 5, 2018) ("General allegations that a party 'knew or should have known' about the contract in question fall short" of the requirements of a tortious-interference claim). For that matter, even the alleged tortfeasor's knowledge that some contract existed is insufficient. Although "a plaintiff is not required to prove that the defendant had perfect or precise knowledge of the terms and conditions of the contracts in issue, the plaintiff must plead specific allegations of the defendant's knowledge of the contract, including some knowledge of the terms and conditions of the allegedly interfered-with contract. *Guzik v. Albright*, No. 16 Civ. 2257, 2018 WL 4386084, at *6 (S.D.N.Y. Sept. 14, 2018).

Moreover, if there is no exclusivity clause in a contract, parties are generally free to engage in business with others. *Red Wing Prods., v. Am. Broadcasting-Paramount Theatres, Inc.*, 213 N.Y.S.2d 315 (1961) (holding defendants were not guilty of malicious interference with the contractual relationship where they did not know of an exclusivity clause in a prior contract at the time they contracted with the performer). The absence of an exclusivity clause generally means that there are no contractual restrictions preventing a television talent or host from participating in other programs. *Id.*

Here, Viacom asserts they have a valid and enforceable contract with Nick Cannon in connection with "Wild 'N Out" and asserts that Defendant intentionally interfered with its contractual relationship with Nick Cannon. [Compl. ¶122]. However, similar to *Red* Wing, Zeus knew nothing about the alleged exclusivity clause when it decided to enter into business with Nick Cannon. Moreover, Plaintiff has failed to indicate where in the contract states that Viacom had the exclusive right to work with Nick Cannon. Therefore, Plaintiff's failure to state with specificity the exclusivity clause in its agreement with Mr. Cannon is not legally sustainable and is grounds for a motion to dismiss.

Thus, Count X should be dismissed.

## VIII.    Discovery Should Be Stayed.

Given the patent insufficiency of this pleading as a basis to proceed in this Court against Defendant, a stay of discovery pursuant to FRCP 26(c) is appropriate. *See Alapaha v. Prodigy*, 2021 WL 1893316, at *2 (S.D.N.Y. May 10, 2021); *In re Currency*, 2002 WL 88278, at *1 (S.D.N.Y. Jan. 22, 2002). A "stay of discovery is appropriate pending resolution of a potentially dispositive motion where the motion 'appear[s] to have substantial grounds' or, stated another way, 'does not appear to be without foundation in law.'" *Id.* Defendant's motion has a strong foundation in law and it asserts substantial grounds for dismissal of Plaintiff's entire Complaint.

In ruling on such requests, courts typically consider several other factors, including: "(1) whether a defendant has made a strong showing that the plaintiff's claim is unmeritorious, (2) the breadth of discovery and the burden of responding to it, and (3) the risk of unfair prejudice to the party opposing the stay. *CT Espresso v. Lavazza*, 2022 WL 1639485, at *1 (S.D.N.Y. May 24, 2022). The above three factors demonstrate that Defendant is entitled to a stay. Defendant has made a strong showing that Plaintiff's claims are unmeritorious, especially given the fair use and First Amendment defenses (in addition to the other arguments) which precludes Plaintiff's claims as a matter of law. Second, this case will entail extensive discovery, which will be cost-prohibitive for Zeus and involve potentially dozens of individuals given that "Bad vs. Wild" consisted of several cast members. Defendant will certainly be burdened if it is required to respond to discovery pending the outcome of this motion. Finally, there is no risk of prejudice to Plaintiff if the Court grants a stay. Because the adjudication of the pending motion is likely to result in a speedy dismissal, which would obviate the need for costly and time-consuming discovery, Defendant respectfully submits that a stay is appropriate.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that the Court stay discovery

and subsequently grant the pending motion with prejudice.

DATED:  March 31, 2025

LEWIS BRISBOIS BISGAARD & SMITH LLP

By:  /s/ Brian Pete
      Jonathan D. Goins (admitted pro hac)
      GA State Bar No. 738593
      600 Peachtree St NE, Suite 4700
      Atlanta, Georgia 30308
      404.991.2160

      Brian Pete
      NY State Bar No. 5071832
      77 Water Street, Suite 2100
      New York, New York 10005
      212.232.1300
      *Counsel for Defendant*

20

### <u>CERTIFICATE OF SERVICE</u>

Brian Pete, an attorney duly admitted to practice before this Court, certifies that on March 31, 2025, he caused the Memorandum of Law to be filed by ECF and served via email upon the attorneys of record for plaintiff.

*/s/ Brian Pete*_____
Brian Pete
