UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Viacom International Inc., | |
| Plaintiff, | 25-cv-973 (AS) |
| -against- | |
| Zeus Networks, LLC, | OPINION AND ORDER |
| Defendant. | |

ARUN SUBRAMANIAN, United States District Judge:

In this case, Viacom International Inc. says that Zeus Networks LLC ripped off its hit show "Wild 'N Out," working in cahoots with the show's host, Nick Cannon. Zeus moves to transfer the case to California, and if that doesn't work, to dismiss it outright. For the following reasons, Zeus's motion to transfer is DENIED and its motion to dismiss is GRANTED IN PART and DE-NIED IN PART.

## BACKGROUND

Viacom launched a show called "Wild 'N Out" on MTV in 2005, which has run for 21 seasons.[1] Dkt. 1 ¶ 18. The comedy show involves team-based competition and is hosted by Cannon. *Id.* ¶ 20. Viacom is headquartered in New York City. *Id.* ¶ 10.

Zeus is a streaming platform with its principal place of business in North Hollywood, California. *Id.* ¶¶ 11, 29. It launched a show called "Bad vs. Wild," which is also hosted by Cannon and also features team-based competition. *Id.* ¶ 33. Viacom sued Zeus for copyright infringement, trademark infringement (under both federal and state law), trade-dress infringement, unfair competition (under both federal and state law), dilution (under both federal and state law), violation of New York's General Business Law Sections 349 and 350, and tortious interference with the contract between Viacom and Cannon. *Id.* ¶¶ 51–127.

Zeus filed motions to transfer the case to the United States District Court for the Central District of California[2] and to dismiss Viacom's complaint. Dkts. 35, 46.

## LEGAL STANDARDS

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."

---

[1] For both pending motions, the Court accepts the well-pleaded allegations in the complaint as true.

[2] Although styled as a motion to transfer under the doctrine of *forum non conveniens*, the Court construes the motion as one to transfer under 28 U.S.C. § 1404 as it seeks transfer to another federal district.

28 U.S.C. § 1404(a). To transfer, two factors must be satisfied. "First, the transferee district must be one where jurisdiction over the defendant could have been obtained at the time suit was brought, regardless of defendant's consent." *Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 26 (S.D.N.Y. 2016) (quotation marks omitted). "Second, the transfer must be in the interest of justice and convenience of the parties and witnesses." *Id.* (quotation marks omitted).

"[T]he Court must evaluate the following factors to determine whether to grant a motion to transfer venue: (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice." *Id.* at 27 (quotation omitted). "[T]he burden is on the movant to show that transfer is justified" clearly and convincingly. *Xiu Feng Li v. Hock*, 371 F. App'x 171, 175 (2d Cir. 2010).

To survive a motion to dismiss for failure to state a claim, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 299 (2d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is plausible on its face 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). When evaluating whether a complaint clears this bar, the Court must "accept[] all factual allegations in the complaint as true[] and draw[] all reasonable inferences in the plaintiff's favor." *Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).

## DISCUSSION

### I. The Court denies the motion to transfer the case

No one disputes that this case could have been brought in the Central District of California, so the Court focuses on factors bearing on whether the transfer is in the interests of justice and convenience of the parties and witnesses. As Zeus has not shown clearly and convincingly that transfer is justified, the Court denies the motion to transfer.

#### A. The convenience of witnesses doesn't justify transfer

"The convenience of witnesses is typically the most important factor when considering a motion to transfer." *AGCS Marine Ins. Co. v. Associated Gas & Oil Co.*, 775 F. Supp. 2d 640, 647 (S.D.N.Y. 2011). In this case, it does not strongly point to either forum.

With respect to Zeus's employees that may be called as witnesses, the Court acknowledges that California is a more convenient forum. Zeus has argued, without contradiction, that all of its officers and a majority of its production staff and cast members reside and work in California. Dkt. 48 at 10. Viacom does not point to any Zeus employees—with the possible exception of Cannon—who reside outside of California.

2

With respect to Viacom, the location of witnesses does not favor transfer. Viacom points to five employees it suggests could be witnesses who work out of the New York headquarters. Dkts. 51 at 3, 51-1 ¶ 6. Although some appear to be more removed from the filming and production process, at least one of the New York-resident witnesses, Matthew Parillo, appears to be heavily involved in production. Further, Parillo notes that many of the recent seasons of Wild 'N Out were "shot on the east coast," primarily in New York. Dkt. 51-1 ¶ 7.

### B.  The remaining factors do not tip the scale toward transfer

The remaining factors do not significantly affect the analysis. While Zeus is based in California, Viacom is based in New York, so there is no clear convenience to the parties in California. While both parties point to evidence that is stored on servers in California and New York, it appears that most of the evidence is digital, so there would be little difficulty in either forum. Nor does Zeus make any meaningful argument that either forum would have difficulty compelling the attendance of witnesses.

Taken together, Zeus has not shown clearly and convincingly that transfer is justified. The motion to transfer is therefore denied.

### II.   The Court warns Viacom to follow the local rules governing length limits for briefs

Local Civil Rule 7.1(c) limits memoranda of law in support of or opposed to a motion to 8,750 words. Viacom's opposition brief claims compliance with the rule but acknowledges that the motion is 9,952 words. Dkt. 50 at 37. The discrepancy was not explained. Viacom never moved for leave to file an oversized brief, not even after Zeus pointed out that the brief was longer than permitted. Dkt. 53 at 2 n.1.

Where a litigant submits an oversized brief, the Court has discretion to strike the excess pages. *See, e.g.*, *Clark v. City of New York*, 2015 WL 5719612, at *1 (E.D.N.Y. Sept. 29, 2015); *Kumaran v. ADM Inv. Servs., Inc.*, 2025 WL 992422, at *3 (S.D.N.Y. Apr. 1, 2025). As the overlength brief was submitted by an experienced, counseled party who has failed to act even after the oversized brief was pointed out to it, it is especially egregious.

The Court will not strike pages from Viacom's brief at the present time. But should Viacom continue to ignore the length limitations, its submissions may be stricken without further notice.

### III.   The copyright claim is dismissed (Count I)

Taking all factual allegations in Viacom's complaint as true, the sole question on the motion to dismiss as to the copyright claim is whether Zeus's alleged "copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999) (quotation omitted).

Viacom's claim is a "selection and arrangement" claim. Even where there is no copyright claim for individual elements of a work, a claim can exist where the elements are "selected, coordinated, or arranged in such a way as to render the work as a whole original." *Feist Publications, Inc. v.*

*Rural Tel. Serv. Co.*, 499 U.S. 340, 358 (1991) (quoting 17 U.S.C. § 101). As Viacom does not allege sufficient similarities to meet that bar, the claim is dismissed.

Viacom's claim is based on several thematic elements it argues are common to both shows, including that they both feature improvisational comedy, team-based competitions, celebrity guests, and the same host. Dkt. 50 at 10–11. In support, it relies primarily on *A&E Television Networks, LLC v. Big Fish Ent., LLC*, 2023 WL 4053871 (S.D.N.Y. June 16, 2023) ("*A&E*"). But that case is distinguishable.

In *A&E*, the plaintiff previously had contracted with the defendant to produce the television show *Live PD*. *Id.* at *2. After the plaintiff suspended the show in the wake of nationwide protests against police brutality, the defendant "launched a multi-media advertising 'blitz' proclaiming 'the return,' 'relaunch,' and 'revival'" of the show on a competing network. *Id.* at *3. Beyond the defendant's own characterization of the show as a revival, the similarities were striking. Both shows had

> [a] mix of live police footage and in-studio commentary; [a] black screen displaying a message regarding a suspect's innocence in white text each time the show begins or returns from a break; [] red and blue lights to mirror police cars; the use of hosts Dan Abrams and Sgt. Larkin, sitting around virtually identical tables with virtually identical mugs; the sequencing of the "Missing" and "Crime of the Week" segments and the guest on the "Missing" segment; the positioning of the hosts; the specific and consistent camera angles used; and the following of specific police departments across weeks.

*Id.* at *9. And visually, the shows looked nearly identical:



*Id.* at *10.

*A&E* acknowledged that the case was unique, and that it was the "rare instance" that such a claim could succeed. *Id.* at *12. By contrast, the alleged infringement in this case is at a much higher level of generality. Viacom points to generic thematic elements like the fact that both shows

have celebrity guests, or the fact that they are both "filmed in front of a live television audience." Dkt. 50 at 10; *see also* Dkt. 1 ¶ 33(d). All that proves is that the shows are in the same genre, not that one infringes on the other's copyright. Viacom's citation of "appropriate[d] phrases" simply points to isolated sentences—that are not even the same—without explaining their significance to the overall show. Dkt. 1 ¶ 33(f). And most of the "talent overlap" besides Cannon are production employees and others who are not visible on screen. *Id.* ¶ 33(c).

True, both shows feature Nick Cannon as the host. And he uses similar language at times in both shows, Dkt. 1 ¶ 33(f), likely because the shows are unscripted and it reflects his natural speaking pattern. Those are factors that count in Viacom's favor. But they are not enough to create the high degree of overlap that would be required for a copyright claim in this scenario. Courts have recognized that the identity of an actor is unprotectable under copyright law. *See Bethea v. Burnett*, 2005 WL 1720631, at *13 (C.D. Cal. June 28, 2005) ("Plaintiffs cannot copyright the idea of having a well-known business leader, or even more specifically Donald Trump, host a reality television program."); *Fuzzy Logic Prods., Inc. v. Trapflix, LLC*, 2015 WL 12791508 (C.D. Cal. Nov. 20, 2015) (rejecting a copyright claim where the plaintiff pointed to, *inter alia*, the fact "many of the same actors" were used across both shows). In other words, Cannon's appearance and similar role in both shows is an element of the selection-and-arrangement analysis, but it is insufficient to support the claim.

Fundamentally, because "selection and arrangement" is entitled to only "thin" protection under copyright law, a subsequent work must "feature the *same* selection and arrangement" to be found to infringe. *A&E*, 2023 WL 4053871, at *9 (emphasis added) (first quoting *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 107 (2d Cir. 2014), and then quoting *Feist*, 499 U.S. at 349, 351). It is not enough to be merely similar. Notably, in the only subsequent opinion to apply *A&E*, the same judge refused to extend the *A&E* holding to a case where the shows were not near-complete copies of one another. *See Walkie Check Prods., LLC v. ViacomCBS Inc.*, 2023 WL 5154416, at *12–13 (S.D.N.Y. Aug. 10, 2023) (noting that the existence of several different aspects of the two shows in question defeated the copyright-infringement claim).

The Court finds the analysis in *Williams v. A&E Television Networks*, 122 F. Supp. 3d 157 (S.D.N.Y. 2015) ("*Williams*"), instructive of the limits of *A&E*'s holding. In *Williams*, the plaintiff alleged that the defendant had copied her treatment, which revolved around couples who were being set up on arranged marriages. *Id.* at 159–61. Like Viacom, the plaintiff pointed to several thematic similarities and common elements that she argued gave rise to a copyright claim. Both the plaintiff's and the defendant's shows included "[f]ilmed interactions between contestants and 'coaching team[s]' or matchmakers, marital therapist sessions, pre-wedding events, a wedding provided by the show, an 'island getaway' honeymoon, an episode featuring the couple moving in together, appearances by and interviews of family members and friends of contestants, and filming of a couple's 'everyday life' as they adapt to marriage." *Id.* at 163.

The *Williams* court granted the defendant's motion to dismiss. *Id.* at 165. It held that the overlap detailed above "stem[med] from the uncopyrightable concept of a reality show about arranged marriages." *Id.* at 163. In other words, the substantial overlap was a necessary product of the genre

that both inhabited, not because one show copied another. *Williams* reinforces the idea that *A&E* is at or near the outer edge of copyright liability, and the allegations here fall short of *A&E*'s facts.

Viacom's contrary analysis would lead to perverse results. Most procedurals would be liable for copyright infringement—they feature similar pacing, plot elements (police interrogations, suspects on the run), dramatic music, and more. Many reality shows, similarly, would be liable for copyright infringement, as they often recruit the same individuals, place them in similar scenarios, and have similar pacing and themes. There is a reason that Viacom can only point to a single case for support; if thematic similarities sufficed for a copyright-infringement claim, it would make the development of new television shows much more difficult.

Furthermore, the fact that Bad v. Wild is not a direct copy of Wild 'N Out is suggested by Viacom's trademark-dilution and unfair-competition allegations—which cite to the *differences* in the show. *See, e.g.*, Dkt. 1 ¶¶ 43–44 (listing elements of Bad v. Wild that "starkly contrast[]" with Wild 'N Out), 102 (comparing the "good-natured" Wild 'N Out to the "degrading" Bad v. Wild). Viacom's argument that the shows are similar enough to support a copyright-infringement claim is in significant tension with its argument that they are different enough that Bad v. Wild would dilute its trademark. And even with respect to the trademark-infringement claims, Viacom points to a consumer who said that Bad v. Wild is "like wild and out but more explicit." *Id.* ¶ 41. In other words, the two shows are similar, but not the same. Viacom's copyright claim is dismissed.

### IV.   Viacom has sufficiently pleaded trademark-infringement and unfair-competition claims (Counts II, IV, VI, and VII)

Zeus next challenges Viacom's trademark-infringement and unfair-competition claims, which the parties agree can be analyzed together. In determining whether a product infringes on a trademark, the Second Circuit has directed courts to consider factors including "the strength of his mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers." *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). Typically, "[a]pplying the *Polaroid* factors is fact-intensive, and resolving the likelihood of confusion on a motion to dismiss posture is not appropriate." *Hermes Int'l v. Rothschild*, 603 F. Supp. 3d 98, 106 (S.D.N.Y. 2022).

The allegations surround the word mark "WILD 'N OUT," as well as the Wild 'N Out logo, both of which are federally registered marks that have been used in commerce since 2005. Dkt. 1 ¶ 25. Based on those marks, Viacom has pleaded sufficient facts to state a claim for trademark infringement at this stage. It has alleged facts pointing to the strength of the marks, the similarity of the competing marks ("Wild 'N Out," "Bad v. Wild," and their associated logos), competitive proximity, actual confusion, and bad faith. Dkt. 50 at 18–22 (citing Dkt. 1 ¶¶ 17–19, 29, 33, 39–41, 53). While it will have to make a greater showing at summary judgment, Viacom has met its burden at this stage.

6

### V.    Zeus's First Amendment defense is premature

In the alternative, Zeus argues that Viacom's trademark and unfair-competition claims are barred by the First Amendment.[3] Dkt. 36 at 10–12. While Zeus might be able to assert a First Amendment defense at a later stage in the litigation, the argument is factbound and the Court cannot dismiss on that ground at this time.

The Second Circuit has held that the First Amendment requires that trademark claims be construed narrowly in certain circumstances to avoid conflict with the freedom of expression. *Rogers v. Grimaldi*, 875 F.2d 994, 998 (2d Cir. 1989); *Down to Earth Organics, LLC v. Efron*, 2024 WL 1376532, at *3 (S.D.N.Y. Mar. 31, 2024) (noting that the *Rogers* test is "generally applicable to Lanham Act claims against works of artistic expression" (quoting *Cliffs Notes, Inc. v. Bantam Doubleday Dell Pub. Grp., Inc.*, 886 F.2d 490, 495 (2d Cir. 1989))). Under *Rogers*, the Court undertakes a two-part inquiry: first, it determines whether the title is "artistically relevant" to the work. 875 F.2d at 999–1001. If it is, the accused product must be "seriously misleading" to be found to infringe. *Id.* at 1000; *see also Down to Earth Organics*, 2024 WL 1376532, at *5–8 (discussing the two-step *Rogers* framework and holding that it warranted dismissal). Viacom concedes that the title is "artistically relevant." Dkt. 50 at 23. So the Court looks to whether Zeus's conduct with respect to the marks is "seriously misleading."

Viacom casts the second step of the *Rogers* test as no different from applying *Polaroid* in the normal course. Dkt. 50 at 23–24. It says if a plaintiff can prove a likelihood of confusion under the standard *Polaroid* analysis, then there's no First Amendment problem. That's not quite right. Under that theory, there would be no need to consider *Rogers*. Instead, *Rogers* insulates some conduct from a trademark claim even if a straightforward application of *Polaroid* might suggest liability. The factors considered by the Court are the same as those in *Polaroid*, but they are applied with a higher bar—the likelihood of confusion must be "particularly compelling." *Down to Earth Organics*, 2024 WL 1376532, at *6 (quoting *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1379 (2d Cir. 1993)).

That said, the Court agrees with Viacom that it cannot conclude at this stage that Zeus will prevail on its First Amendment defense. Although the "seriously misleading" test from *Rogers* leads to a higher standard than the typical *Polaroid* analysis in cases where it applies, it is still inherently factbound. And it is not immediately apparent from the face of Viacom's complaint that Zeus would prevail on its First Amendment defense. The Court thus denies Zeus's motion to dismiss the trademark claims on First Amendment grounds, but Zeus can raise the defense at a later stage.

---

[3] Although there is the potential for conflict between dilution claims and the First Amendment, *see* Lisa P. Ramsey, *Free Speech Challenges to Trademark Law After* Matal v. Tam, 56 Hous. L. Rev. 401, 456–61 (2018) (arguing that dilution claims are precluded by the First Amendment), the Court reads Zeus to challenge only the infringement claims under the First Amendment at this stage. The Court therefore focuses only on the First Amendment implications of the infringement claims.

### VI.    Viacom's trade-dress claim is dismissed (Count III)

Zeus next challenges Viacom's trade-dress claim. A trade-dress claim has three requirements: (1) the dress must be distinctive; (2) a likelihood of confusion exists between the plaintiff's product and the defendant's product, and (3) the design is not functional. *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 31 (2d Cir. 1995).

"At one time, 'trade dress' referred only to the manner in which a product was 'dressed up' to go to market with a label, package, display card, and similar packaging elements. However, 'trade dress' has taken on a more expansive meaning and includes the design and appearance of the product as well as that of the container and all elements making up the total visual image by which the product is presented to customers." *Id.* (citations omitted).

Despite the expansion of trade-dress claims, Viacom does not point to any authority where elements of a television show could be protected by trade dress. And the Court's own research suggests that no court has allowed a trade-dress claim over the look and feel of a television show. *See VBS Distribution, Inc. v. Nutrivita Lab'ys, Inc.*, 811 F. App'x 1005, 1008 (9th Cir. 2020) (affirming ruling rejecting trade-dress claim over "look and feel" of television show); *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 562–65 (C.D. Cal. 2005) (holding that trade-dress claim in this context is "improper" and a "repackaging [of] copyright claims in trademark causes of action"; the elements cited for trade-dress infringement "*are* the product" and are therefore functional). Even if the shows are similar, Viacom's hodge-podge "look-and-feel" claim—much like its selection-and-arrangement copyright claim—would give media companies an unprecedented new weapon to squelch competition. It's unclear why the traditional tools available to plaintiffs in this context—copyright claims unfocused on a show's selection and arrangement, trademark, and unfair-competition claims—would not suffice. Absent *some* authority for Viacom's claim in this context, it is dismissed.

### VII.    Viacom's dilution claims are dismissed (Counts V and VIII)

Zeus next challenges Viacom's dilution claims under federal and state law. It argues that Zeus's use of its trademarks (the show title and logo) will "dilut[e] and weaken[] the unique and distinctive significance and qualities" of the marks. Dkt. 1 ¶ 86; *accord* ¶ 111. It also argues that Zeus's use of the marks will harm the marks' reputation. *Id.* ¶¶ 88, 112.

Zeus's first argument is that for an actionable dilution claim, the respective marks must be identical. Dkt. 36 at 14. *Id.* Viacom does not rebut Zeus's argument that the marks are not identical. Instead, it argues that Zeus gets the law wrong—and that it must only show that its marks are distinctive or have acquired secondary meaning and that there is a likelihood of dilution due to blurring. Dkt. 50 at 30–31. Viacom argues that it has met the second requirement by showing "actual association between the two marks occurred as a result of their similarity." *Id.* at 30.

Neither side is entirely correct on the law. Viacom is correct that identity is not required for a dilution claim. Instead, dilution can be *presumed* where the marks are identical. *Savin Corp. v. Savin Group*, 391 F.3d 439, 453 (2d Cir. 2004). But even in the absence of the presumption, a

dilution claim requires Viacom to show that the marks are substantially similar—a higher bar than the likelihood-of-confusion inquiry for infringement. *Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026, 1029 (2d Cir. 1989) (federal law); *ABC Rug & Carpet Cleaning Serv., Inc. v. ABC Rug Cleaners, Inc.*, 2010 WL 10091076, at *23 (S.D.N.Y. Feb. 10, 2010) (New York law).

Viacom has not stated a claim that the marks are substantially similar. It does not even acknowledge that requirement in its briefing. And while the complaint explains why Viacom believes the *shows* are substantially similar for purposes of its copyright claim, it doesn't allege facts suggesting the *marks* are substantially similar for the purposes of the dilution claim. Dkt. 1 ¶¶ 17–46. As that is fatal to the dilution claims, they are dismissed. But because the Court believes that additional factual allegations to suggest the marks' substantial similarity could state a claim for dilution, Viacom is granted leave to amend to replead the dilution claims.

### VIII.    Viacom's GBL claims are dismissed (Count IX)

Zeus next challenges Viacom's claims under New York General Business Law Sections 349–50.[4] "To successfully assert a claim under either section, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 944 N.Y.S.2d 452, 452 (N.Y. 2012)).

Viacom's GBL claims sound exclusively in trademark, alleging that Zeus is using Viacom's trademarks in a misleading way. Dkt. 1 ¶¶ 115–120. "[B]ut the majority [of courts] have held that trademark cases are outside the scope of this general consumer protection statute." *Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410, 413 n.2 (S.D.N.Y. 2002).

Viacom does not make any argument as to why *Tommy Hilfiger* is wrong, nor does it point to any cases where courts have approved of trademark claims under the GBL. Instead, its only response is to point to *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256 (2d Cir. 1995), which approvingly cited a district court case holding that "corporate competitors now have standing to bring a claim under this statute so long as some harm to the public at large is at issue." *Id.* at 264 (quoting *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 786 F. Supp. 182, 215 (E.D.N.Y. 1992), *vacated in part on other grounds*, 973 F.2d 1033 (2d Cir. 1992) (cleaned up)). But just because a corporate competitor can, in some circumstances, bring a claim under the GBL doesn't mean that it can bring a claim that sounds in trademark. Since Viacom's GBL claims are limited to trademark theories, they are dismissed.

---

[4] Zeus's section header appears to suggest that Viacom's GBL claims are preempted by federal law. Dkt. 36 at 16. But it does not explain why the claims would be preempted. The Court as a result does not address preemption.

### IX.    Viacom's tortious-interference claim can proceed (Count X)

Finally, Zeus challenges the tortious-interference claim. "In order to make a claim for tortious interference, plaintiff must plead the existence of a valid contract between the plaintiff and the [third party], [defendant's] knowledge of that contract, and [defendant's] intentional procurement of [the third party's] breach of the contract without justification, actual breach of the contract, and [plaintiff's] damages resulting from the breach." *Oddo Asset Mgt. v. Barclays Bank PLC*, 19 N.Y.3d 584, 594 (2012).

Zeus's sole argument against the claim is that Viacom has not pleaded that its contract with Cannon had an exclusivity provision and that Zeus knew about the provision. But that misstates Viacom's claim. Viacom does not allege in its complaint, nor does it argue in its brief, that it had any exclusivity arrangement with Cannon. Instead, it argues that Cannon was contractually prohibited from engaging with outside services that tarnish his image as host of Wild 'N Out or infringe Viacom's intellectual property. Dkt. 1 ¶¶ 47–50. Whether Zeus knew about such provisions, whether it encouraged Cannon to violate them, and whether Cannon actually violated them in a way that caused Viacom damage, are not questions that the Court can answer at this stage. This claim can proceed.

### CONCLUSION

Zeus's motion to transfer is DENIED. Its motion to dismiss is GRANTED IN PART and DENIED IN PART; the copyright, trade-dress, dilution, and GBL claims are DISMISSED but the trademark-infringement, unfair competition, and tortious-interference claims may proceed. The stay of discovery is lifted with respect to the surviving claims. Within 21 days of this order, the parties are directed to submit a revised case management plan with proposed deadlines for discovery and motions for summary judgment.

Viacom may file an amended complaint within 21 days to plead facts sufficient to state a claim for dilution. Zeus's deadline to respond to the complaint is extended to 21 days after an amended complaint is filed, or 21 days after the deadline expires should Viacom decline to amend its complaint.

The Clerk of Court is respectfully directed to terminate Dkts. 35 and 46.

SO ORDERED.

Dated: March 30, 2026
New York, New York

ARUN SUBRAMANIAN
United States District Judge